UNITED STATES, Appellee

v

CARL A. COLLINS, Jr., Airman Second Class,
U. S. Air Force, Appellant

16 USCMA 167, 36 CMR 323

No. 19,063

March 25, 1966

*Major William A. Howland, Jr.*, argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph Buchta* and *Lieutenant Colonel Joseph B. McMullin*.

*Major Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

QUINN, Chief Judge:

The accused stands convicted by a general court-martial of housebreaking, attempted housebreaking, larceny of money in the amount of $103.00 from a fellow airman, and wrongful and willful damage to property of a value of $74.60, in violation of Articles 130, 80, 121, and 109, Uniform Code of Military Justice, 10 USC §§ 930, 880, 921, and 909, respectively. His sentence includes a bad-conduct discharge and confinement at hard labor for five years. On this appeal, he contends he was prejudiced by an alleged misjoinder of two offenses in a single specification under Article 109.

According to the evidence, the accused broke into the refreshment center at Lowry Air Force Base, Colorado, during the night of March 11, 1965. Searching for money, he tried to pry open a safe in the office, but succeeded only in damaging the dial on the door of the safe. However, he forced open, and in the process damaged, the money compartment of three pinball machines and a jukebox. These machines were located in the dining area. The safe was owned by Midwest Concessions, the operator of the refreshment center; the pinball machines and jukebox were owned by Appollo Stereo Music Corporation. The former paid $34.60 to repair the safe; and it was stipulated that the damage to the machines amounted to $40.00. Both items of damage were set out in a single specification, and the amounts were aggregated so that the total damage exceeded $50.00. As a result, the offense was punishable by confinement at hard labor for five years. See Table of Maximum Punishments, paragraph 127c, Section A, Manual for Courts-Martial, United States, 1951, page 223. The accused contends there were two separate offenses each of which was punishable by confinement for only one year.

Article 109, Code, supra, makes it an offense to "willfully and wrongfully" damage property other than military property of the United States. No specific amount of damage, in terms of dollar value, is prescribed by the Article but, under the Table of Maximum Punishments, the amount of damage determines the maximum period of confinement at hard labor to which the accused is subject. Thus, if the damage amounts to $20.00 or less, the maximum confinement is six months; if it exceeds $20.00 but is not more than $50.00, the maximum confinement is one year; and if the damage is more than $50.00, the authorized confinement is five years. When one article is involved, the only problem, if it is one, is to allege and prove the dollar amount of the damage. However, if two or more articles are damaged, the question arises as to whether the injury to each article is a separate offense, or whether all the damage is chargeable in one offense. The answer is measured by Congressional intention as to the unit of prosecution.

Subject to the Constitutional limitation as to cruel and unusual punishment, Congress can constitute every act of a specified nature a separate offense, and make each separately punishable. In Blockburger v United States, 284 US 299, 302, 76 L ed 306, 52 S Ct 180 (1932), for example, the Supreme Court of the United States construed the Harrison Narcotic Act as condemning every sale made by the accused in violation of the Act, without regard to how "closely they may follow each other," and irrespective of the fact that the sales were made to the same purchaser. Similarly, in Ebeling v Morgan, 237 US 625, 629, 59 L ed 1151, 35 S Ct 710 (1915), the Supreme Court held that, in enacting the statute prohibiting injury to mail bags, Congress intended "to protect each and every mail bag from felonious injury and mutilation." As a result, the Court concluded the accused was properly sentenced to consecutive punishments under several counts of the indictment, in spite of the fact that all the mail bags were cut on the same occasion. On the other hand, in Bell v United States, 349 US 81, 99 L ed 905, 75 S Ct 620

(1955), the Supreme Court determined that the Mann Act, which prohibits the transportation of a female in interstate commerce for an immoral purpose, did not reflect a Congressional intention to punish the accused for each female transported. It, therefore, limited the punishment for transportation of two females on one trip to that for a single offense. In Prince v United States, 352 US 322, 327, 1 L ed 2d 370, 77 S Ct 403 (1957), the Supreme Court considered the Federal Bank Robbery Act and determined that the "apparent purpose" of the Act did not disclose any legislative intention "to pyramid the penalties," according to the number of acts committed by the accused in the course of one incident. It, therefore, held that the defendant could not be separately punished under the Act for unlawfully entering the bank and robbing it.

There is almost no reference to Article 109 in the Congressional hearings on the Uniform Code of Military Justice. It is mentioned once in a general listing of the punitive articles of the Uniform Code, and then only to indicate that it derived from Article of War 89. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1230. In turn, Article 89 evolved out of former Articles of War 54 and 55, which trace their origin back to Article 16 of the Articles of War 1776. Colonel Winthrop notes that the original provision was designed "to prevent straggling and maintain order and discipline . . . while at the same time availing to secure from intrusion and injury the premises and property of the inhabitants" when the Army was on the march. Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 660. However, his discussion sheds no light on the Congressional intention to group all items of damage in one incident in one unit of prosecution. Equally unilluminating are the Congressional hearings in 1916 on the revision of the Articles of War. See Hearings before the Senate Committee on Military Affairs, February 8, 1916, 64th Congress, 1st Session, pages 82–83; United States v Barnes, 71 BR 223, 230.

Without any meaningful legislative background, we are confined to the language of Article 109 to ascertain the intention of Congress. The few reported prosecutions under the Article which we have found tend to indicate that the language of the Article can reasonably be construed to express a purpose to permit all damage inflicted in a single transaction to be combined into a single offense, instead of constituting a separate offense for each article damaged. See United States v Bragg, 4 CMR 778; United States v Reeves, 10 CMR 310. When a criminal statute does not clearly reflect the legislative intention "to make each stick in a faggot a single criminal unit," the judiciary is enjoined "to resolve doubts" in favor of the accused and "against the imposition of a harsher punishment." Bell v United States, supra, at page 83. As a result, a difference in the ownership of the several articles would make no difference to the prosecution. In other words, the happenstance of a difference in ownership would not convert a single offense into multiple wrongs. In this regard, the situation is analogous to that in a prosecution for larceny of several articles of property belonging to different persons, all of which are taken at the same time and from the same place. United States v Dicario, 8 USCMA 353, 24 CMR 163; Chanock v United States, 267 Fed 612 (CA DC Cir) (1920); Manual for Courts-Martial, supra, paragraph 200a (7). Both the accused and the Government have, in fact, pressed the analogy upon us. The rule is supported by our interpretation of Article 109 and is consistent with the Manual provision that substantially one transaction should not be made the basis for multiplication of the charges. Id., paragraph 26b. We conclude, therefore, that when several articles of property are damaged, in violation of Article 109, under circumstances indicating only a single incident or transaction, the damage must be alleged as part of one offense.

169

Our conclusion that wrongful damage of several articles at the same time and at the same place is a single wrong is not fully determinative of the accused's appeal. Still to be considered is whether the articles were all damaged in a single incident, as alleged in the specification, and as to which the Government has the burden of proof. United States v Maynazarian, 12 USCMA 484, 485, 31 CMR 70. The accused contends the evidence fails to support the allegation. He relies upon the fact that the safe was located in what was described as the office area of the building, whereas the pinball machines and the jukebox were in the public or dining area. Unfortunately, more evidence of the physical relationship of the two areas appears in the Article 32 investigation than in the record of trial. Nevertheless, the evidence, and the reasonable inferences to be drawn therefrom, demonstrate that while the respective uses of the two areas were different, their physical contiguity and their function in the operation of the business made them integral parts of a single establishment.

Frequently, witnesses referred to the building as a refreshment *stand*. The term "stand" implies a stall or booth, both of which suggest a *small* place of business. The office area was also the storage area. ■ These circumstances unmistakably point to a small establishment. They also justify the inference that the building was, in fact, so small that the storage area was immediately adjacent to the dining area. The evidence does not indicate whether a door or other type of divider separated the two areas, but assuming one existed, and that it was closed at the time the accused damaged the safe in the storage area, that section plainly was an ancillary part of the dining area. For operational purposes, the two areas were inseparable parts of a single place of business. They were, in our opinion, also inseparable as a physical entity for the purpose of determining whether all the articles damaged by the accused were damaged in a single place. See United States v Hall, 6 USCMA 562, 20 CMR 278. We conclude there is ample evidence to support the allegation of damage to the several articles as a single offense.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.