# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant MARIO A. JINETECABARCAS**
**United States Army, Appellant**

ARMY 20130444

Headquarters, 25th Infantry Division
Lieutenant Colonel Douglas Watkins, Military Judge
Colonel Mark A. Bridges, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Major Robert N. Michaels, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Major Daniel D. Derner, JA; Captain Daniel M. Goldberg, JA (on brief).

27 March 2015

----------------------------------
MEMORANDUM OPINON
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

LIND, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of willful disobedience of a superior commissioned officer, six specifications of destruction of non-military property, sexual assault, one specification of maiming, five specifications of assault consummated by a battery, battery upon a child under 16 years, one specification of aggravated assault with a dangerous weapon, one specification of kidnapping, two specifications of unlawful entry, one specification of communication of a threat, one specification of violation of a state temporary restraining order, and one specification of adultery, in violation of Articles 90, 109, 120, 124, 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 909, 920, 924, 928, 934 (2012) [hereinafter UCMJ].  The military judge sentenced appellant to a dishonorable discharge and confinement for 16 years.  Pursuant to a pretrial agreement, the convening authority approved only so much of the adjudged sentence as provided for

a dishonorable discharge and confinement for 180 months. The convening authority also credited appellant with 121 days of confinement against the sentence to confinement.

This case is before the court for review under Article 66, UCMJ. Appellant assigns two errors. Both merit discussion; one merits relief. Appellant first avers the military judge erred by allowing trial counsel to use a quotation from the Book of Psalms during his sentencing argument. In his second assignment of error, appellant alleges the military judge erred by not dismissing three specifications as multiplicious with three additional specifications.

**FACTS**

Appellant pled guilty to numerous charges and specifications, all of which came about as a result of his serially abusing his girlfriend, Specialist (SPC) KK.

Appellant and SPC KK met during a training exercise in May of 2012. Both were medics but were assigned to different units. They began dating. In mid-August 2012, appellant moved into SPC KK's on-post housing to live with her. Appellant was still married to his wife, Ms. JJ, at all times during his relationship with SPC KK.

On three separate occasions between 15 September 2012 and 2 October 2012, appellant intentionally smashed SPC KK's cellular phone, destroying the phone each time, requiring SPC KK to purchase a new phone. On each occasion, the destruction followed appellant's anger at SPC KK for such purported transgressions as putting a pass-code lock on her phone or having another male's phone number in her contacts. Appellant moved out of SPC KK's home after the third incident.

On 7 October 2012, appellant and SPC KK spent the night in a hotel in Honolulu "to try to fix the relationship." After dinner and an evening of drinking, the two returned to their hotel room. Once inside the room, appellant attempted to kiss SPC KK. She said "no," prompting appellant to throw her phone against a sliding glass door, again destroying the phone. When SPC KK attempted to leave the room, appellant "mounted" her on top of the bed and slapped her across the face. After a brief respite, appellant again jumped on top of SPC KK and began punching her in the face. Specialist KK rolled over on her stomach as appellant continued punching her in the back of the head.

After appellant stopped hitting SPC KK, she attempted to calm him down, telling him everything would be alright. After SPC KK looked at her injuries in the bathroom mirror, both SPC KK and appellant returned to the bed. A few minutes later, appellant jumped off the bed for no apparent reason and began to punch SPC KK in the head again after she rolled onto the floor to protect herself.

2

After again calming appellant down, SPC KK went to the bathroom to gather her belongings, hoping appellant would pass out and she would be able to leave. When appellant noticed SPC KK packing, he grabbed her, threw her on the bed and punched her repeatedly in the face and head. After once again calming appellant, SPC KK lay down on the bed next to him. Appellant began to kiss her. Specialist KK acquiesced, fearing that any resistance would provoke further beating. She was exhausted and in pain and, therefore, did not resist when appellant had sexual intercourse with her.

After appellant ejaculated, he fell asleep with his arms wrapped around SPC KK. Specialist KK was facing away from him looking at the clock which indicated it was 0200. Specialist KK did not sleep. She lay awake until 0600 when she asked appellant if she could leave. He told her "no." She did not try to leave for fear of another violent outburst. Again at 0800, SPC KK indicated that she wanted to leave and appellant would not let her. Appellant and SPC KK checked out of the hotel at 0900 and appellant dropped SPC KK off at her house where Ms. KK, SPC KK's sister was present.

Specialist KK informed her sister of what happened in the hotel room. After Ms. KK called their mother and told her what appellant had done to SPC KK, their father arrived on Oahu and assisted SPC KK in filing a police report and in obtaining a Temporary Restraining Order (TRO) in the Kapolei Family Court enjoining appellant from any contact with SPC KK. Appellant was served with this TRO on 18 October 2012. It was dismissed at the request of SPC KK on 27 November 2012. In addition, both SPC KK's and appellant's units learned of the incident. Both appellant and SPC KK were issued no-contact orders from their command. Appellant was given the no-contact order on 9 October 2012. It was not lifted or rescinded at any relevant point during this series of events.

On 13 October 2012, despite the existence of the no-contact orders, SPC KK invited appellant to her house and he accepted the invitation. After an argument, appellant reported the order violation for both himself and SPC KK. On 9 November 2012, appellant again went to SPC KK's home and spoke to her in violation of both the TRO and the no-contact order.

On 28 November 2012, despite the continuing no-contact order, appellant went to SPC KK's house to cook dinner for her. Specialist KK was not home when appellant arrived, but she had left her phone in the home while she was out. Appellant searched the phone and discovered a (work-related) text message SPC KK had sent to her ex-boyfriend. Specialist KK arrived home with her then one year old son PK (SPC KK's son, father, and grandfather were named "Psalms" a family name). After confronting SPC KK about the text message, appellant shoved a table at SPC KK. PK ran toward his mother crying. Appellant moved toward SPC KK as SPC KK assumed a defensive position over her son. Appellant began punching SPC

3

KK in the back and the side of her head.  When SPC KK moved away from appellant, she realized that PK had a bloody lip.  While SPC KK was caring for PK, appellant intentionally destroyed a television and laptop computer in SPC KK's home.  On 29 November 2012, appellant returned SPC KK's house key upon her request.

In early December 2012, appellant and SPC KK again reconciled and, in violation of the continuing no-contact orders, they went to buy new furniture together.  On 23 December 2012, appellant was at SPC KK's house as she was packing to go home to her family for the holidays.  Appellant again became angry with SPC KK, prompting her to tell him she wanted to break up.  Appellant threatened to kill himself.  When he left the home, SPC KK locked the door to her house, but opened it again when he returned.  Appellant punched SPC KK in the face when she would not let him back in the house.  Specialist KK's sister witnessed this assault and battery.

After SPC KK left her house, appellant entered the house through a window and spent the night in the home without SPC KK's permission.  The next day, while still in SPC KK's home, appellant sent her a series of e-mails (again in violation of the no-contact order) and, in order to get SPC KK to respond, appellant threatened to burn her house down and destroy her belongings.  Specialist KK finally relented and responded to appellant when he threatened to destroy the sonogram picture of SPC KK's son.

On 6 January 2013, appellant went to SPC KK's house on the pretense of getting her to sign the paperwork from the furniture purchases.  She was not home at the time and appellant entered without her permission.  When SPC KK arrived home, she found appellant standing in her kitchen.  Appellant lunged toward her and, thinking he was going to hit her in the face again, SPC KK held her arms up to block him.  Instead, appellant stabbed her in the abdomen with a knife he had been holding.  He then threw her on the couch, pinned her down, and sliced her cheek and forehead with the knife telling her, "You never loved me and now I'm going to make it so that no one ever loves you," or words to that effect.  Specialist KK tried to run out of the house but appellant blocked her.  She screamed loudly, hoping the neighbors would hear, and finally appellant left.

## LAW AND ANALYSIS

### *Improper Argument*

During his sentencing argument, trial counsel stated, "The accused stood over [SPC KK] while she huddled on the floor over her one year old son, Psalms, a name from his grandfather and great grandfather who was named from the Book of Psalms

4

in the Bible." Trial counsel ended his sentencing argument with the following comment:

> Your Honor, I'll leave you today with a lament from the Book of Psalms. You hear the desire of the afflicted. You will strengthen their heart. You will incline your ear to do justice to the fatherless and the oppressed so that man who is of the earth may strike terror no more.[1]

Immediately after this quote, trial defense counsel gave his sentencing argument. He did not object to or otherwise comment on trial counsel's argument.

Because appellant did not object at any time to the trial counsel's sentencing argument, we review "the propriety of the argument for plain error." *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (citing *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011)). Under plain error review, appellant must prove "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Marsh*, 70 M.J. at 104 (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)).

We begin with the basic premise that "an appeal to religious impulses or beliefs as an independent source of a higher law calling for a particular result would constitute improper argument." *United States v. Kirk*, 41 M.J. 529, 533 (C.G. Ct. Crim. App. 1994).

Appellant argues that "reference to biblical passages in an attempt to justify the sentence . . . has no place in our system of military justice." Appellant cites no authority supporting a per se prohibition of reference to religious text in arguments. *See generally United States v. Green*, 64 M.J. 289 (C.A.A.F. 2007); *Greene v. Upton*, 644 F.3d 1145, 1158-59 (11th Cir. 2011). Instead, in our analysis, we focus not "on words in isolation, but on the argument as 'viewed in context.'" *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)). Trial counsel's reference to the *Psalms* could be interpreted in various ways in the context of this argument. To the extent that trial counsel's quote is interpreted as suggesting that a "higher law" calls for harsh punishment, it would be an improper argument. *Kirk*, 41 M.J. at 533; *see also United States v. Hickerson,* 71 M.J. 659, 669-70 (N.M. Ct. Crim. App. 2012), *rev'd on other grounds*, 73 M.J. 53 (C.A.A.F. 2013) (summ. disp.) (finding it "improper and wholly unnecessary" for trial counsel to cite biblical passage suggesting harsh punishment for sins against children where accused's plea for leniency was not based on fervent

---

[1] This passage is from *Psalms* 10:17-18. We take judicial notice that "You" is a reference to God. Military Rule of Evidence 201; *United States v. Paul*, 73 M.J. 274 (C.A.A.F. 2014).

religious belief or newfound spirituality). Of equal concern is any suggestion by the trial counsel that the military judge is God and should use divine authority rather than using his own independent judgment in accordance with the law in arriving at a sentence. *See Sandoval v. Calderon*, 241 F.3d 765, 775-79 (9th Cir. 2001). On the other hand, trial counsel's reference to the *Psalms* passage could be interpreted as an attempt to tie SPC KK's son's name to the biblical passage to illustrate proper principles of punishment including victim impact and protection of society from the wrongdoer. *See United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) ("An accused is supposed to be tried and sentenced as an individual on the basis of the offense(s) charged and the legally and logically relevant evidence presented."); *see also Greene*, 644 F.3d at 1158-59. Our superior court has not held that trial counsel's use of biblical passages to illustrate the proper principles of punishment constitutes error. Thus, because trial counsel's biblical reference is subject to reasonable interpretation under the circumstances, we do not find plain and obvious error. Nonetheless, we remind counsel that any use of biblical passages in sentencing argument carries great risk of undermining the reliability of the sentence. *See generally Baer*, 53 M.J. at 239 (noting the best and safest advocacy will stay well clear of the "gray zone").

Even if we found plain or obvious error with this argument, we conclude appellant has failed to meet his burden to demonstrate a material prejudice to his substantial rights. To make this determination, we have examined and balanced three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction. *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005); *see also United States v. Frey*, 73 M.J. 245, 249 (C.A.A.F. 2014); *Halpin*, 71 M.J. at 480 (applying the same). We consider whether "trial counsel's comments, taken as a whole, 'were so damaging that we cannot be confident that [the appellant] was sentenced on the basis of the evidence alone.'" *Frey*, 73 M.J. at 249 (quoting *Halpin*, 71 M.J at 480) (alteration in original).

Trial counsel's brief biblical quote was five lines of an eleven page argument and was not "spread throughout" the argument but rather was confined to the very end of the argument. *Fletcher*, 62 M.J. at 184. The fact that the military judge sentenced appellant to four years *less* than the sentence to confinement argued by trial counsel suggests that the military judge was not inflamed by trial counsel's argument and "instead reached an independent judgment on sentencing." *Schroeder*, 65 M.J. at 58. Thus, "[e]ven assuming a deliberate strategy to indulge in improper argument," trial counsel's "effort to 'cultivate a severe sentence did not bear fruit.'" *Baer*, 53 M.J. at 238 (quoting *United States v. Ramos*, 42 M.J. 392, 397 (C.A.A.F. 1995)). Accordingly, even assuming plain and obvious error, it is not severe. *See generally Fletcher*, 62 M.J. at 184-85.

6

Furthermore, appellant pleaded guilty and was sentenced by a military judge. Despite the fact that the military judge neither stopped the trial counsel's argument nor stated that he would not consider the biblical reference as an appeal to higher law, the military judge is "presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Rodriguez*, 60 M.J. 87, 89 (C.A.A.F. 2004) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). There is nothing in the record to indicate that trial counsel's biblical quote improperly swayed the military judge's sentence. Appellant was facing confinement for life without the possibility of parole. The military judge sentenced him to 16 years' confinement, a sentence that was within a year of the maximum sentence appellant agreed was appropriate as part of his pretrial agreement.

Finally, the weight of the evidence supporting the military judge's sentence was overwhelming and any potential improper comment was "surrounded by powerful and proper sentencing argument." *Frey*, 73 M.J. at 251. Over the course of approximately three months, appellant repeatedly destroyed SPC KK's personal property, entered her home without permission, assaulted her on numerous occasions, including one occasion where her one-year-old son was also injured, sexually assaulted her, and held her in a hotel room against her will. His treatment of SPC KK culminated in an aggravated assault in which he stabbed her in the abdomen and then cut her cheek and forehead telling her "You never loved me and now I'm going to make it so that no one ever loves you," or words to that effect. Trial counsel highlighted and described all of these crimes over the course of his lengthy sentencing argument. Even considering appellant's significant evidence in mitigation, including testimony that he saved a Soldier's life while serving in Iraq, the "weight of the evidence amply supports the sentence imposed by the [military judge]." *Id.* (quoting *Halpin*, 71 M.J. at 480).

For these reasons, we are confident appellant was sentenced on the basis of the evidence alone. *See Halpin*, 71 M.J. at 480. We find no material prejudice to appellant's substantial rights and, thus, he is entitled to no relief. *Frey*, 73 M.J. at 251.

### *Multiplicity and Unreasonable Multiplication of Charges*

Before announcing appellant's sentence, the military judge sua sponte announced that "for sentencing purposes" he had merged: 1) the specification alleging the violation of the TRO with the specification alleging the violation of the no-contact order (Specification 7 of Charge IX and the Specification of Charge II); 2) the specifications alleging damage to the television and the laptop computer (Specifications 5 and 6 of Charge IV); and 3) the specification alleging aggravated assault with a dangerous weapon by stabbing SPC KK in the abdomen and cutting her cheek and forehead with the specification alleging maiming by slicing SPC KK's

cheek and forehead (the Specification of Charge VI and Specification 9 of Charge VII).

Appellant now claims the military judge committed plain error when he did not also dismiss these specifications as multiplicious.[2]  At trial, defense counsel made no motions alleging multiplicity, nor did he object or request further relief when the military judge announced his rulings on these particular charges and specifications.

Multiplicity is "that which is aimed at the protection against double jeopardy as determined using the Blockburger/Teters analysis."  *Campbell*, 71 M.J. at 23 (citing *Blockburger v. United States*, 284 U.S. 299 (1932); *United States v. Teters*, 37 M.J. 320 (C.A.A.F. 1993)).  This analysis looks at whether each offense "requires proof of an additional fact which the other does not."  *Teters*, 37 M.J. at 377 (quoting *Blockburger*, 284 U.S. at 304).

"[A]ppellate consideration of multiplicity claims is effectively waived by unconditional guilty pleas, except where the record shows that the challenged offenses are 'facially duplicative.'"  *United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F. 1997) (citing *United States v. Broce*, 488 U.S. 563, 575 (1989)); *see also United States v. Campbell*, 68 M.J. 217, 219-20 (C.A.A.F. 2009).  We interpret this to mean that an unconditional guilty plea, without an affirmative waiver, results in a forfeiture of multiplicity issues absent plain error.  *See United States v. St. John*, 72 M.J. 685, 687 n.1 (Army Ct. Crim. App. 2013); *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (noting military courts consistently fail to distinguish between the terms "waiver" and "forfeiture").  An appellant may show plain error and overcome forfeiture by proving the specifications are facially duplicative. *St. John*, 72 M.J. at 687 n.1.  Facially duplicative means the factual components of the charged offenses are the same.  *Lloyd*, 46 M.J. at 23 (citing *Broce*, 488 U.S. at 575).  If an offense is a lesser-included offense of another, the offenses are facially duplicative.  *See St. John*, 72 M.J. at 688-89; *see also United States v. Palagar*, 56 M.J. 294, 296 (C.A.A.F. 2002).

In assessing whether one offense is a lesser included of another, this court applies the elements test, wherein one compares the elements of each offense.  *See St. John*, 72 M.J. at 687 (citing *United States v. Jones*, 68 M.J. 465, 468, 470

---

[2] We reject appellant's assertion that the military judge had a sua sponte duty to dismiss all specifications he merged for sentencing purposes because they were "substantially the same conduct."  Contrary to appellant's assertion, the military judge did not consider these specifications to be "multiplicious," rather he noted only that he merged them "for sentencing purposes," presumably applying the doctrine of unreasonable multiplication of charges for sentencing in accordance with *United States v. Campbell*, 71 M.J. 19 (C.A.A.F. 2012).

(C.A.A.F. 2010)).  This test does not require "that the 'offenses at issue employ identical statutory language.'"  *Id*. at 687-88 (quoting *United States v. Alston*, 69 M.J. 214, 216 (C.A.A.F. 2010)).  Rather, the court will review the language of the specification to determine "if the lesser-included offense would necessarily be proven by proving the elements of the greater offense."  *Id.* at 688 (citing *United States v. Wilkins*, 71 M.J. 410, 412 (C.A.A.F. 2012)).

### Specification 7 of Charge IX and the Specification of Charge II

In the Specification of Charge II, appellant was charged with willfully disobeying the lawful order of his superior commissioned officer to "have no contact with" SPC KK.  Appellant pled guilty to willfully disobeying this order on divers occasions, including on 9 November 2012 when he went to SPC KK's home.  In Specification 7 of Charge IX, appellant was charged with, and pled guilty to, violating the state TRO enjoining him from any contact with SPC KK, also on 9 November 2012, by going to SPC KK's home. Because appellant's "singular conduct . . . violated two orders that were essentially the same order issued by two different officials," the military judge appropriately merged these two specifications "for sentencing purposes."  *See Campbell*, 71 M.J. at 24.

We conclude the Specification of Charge II and Specification 7 of Charge IX are not "facially duplicative" and accordingly, appellant, by his unconditional plea of guilt, has waived any multiplicity claims.  *St. John*, 72 M.J. at 687.[3]

Appellant asks, in the alternative, that we dismiss Specification 7 of Charge IX as an unreasonable multiplication of charges with the Specification of Charge II as applied to findings under  *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001).  We decline to do so.

What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."  Rule for Courts-Martial 307(c)(4).  The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion."  *Campbell*, 71 M.J. at 23 (quoting *Quiroz*, 55 M.J. at 337).  In *United States v. Quiroz,* our superior court listed five factors to help guide our analysis of whether charges have been unreasonably multiplied:

---

[3] Moreover, we find these two specifications are not multiplicious as defined in *Campbell*, 71 M.J. at 23.

(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?[4]

(2) Is each charge and specification aimed at distinctly separate criminal acts?

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. at 338-39.

After balancing the *Quiroz* factors in this case, we conclude that appellant's convictions for violating both the military "no-contact" order and the TRO do not constitute an unreasonable multiplication of charges as applied to findings. First, appellant pled guilty to both of these specifications and did not object at trial to the military judge's finding of guilt as to each specification. Second, although appellant's single action of going to SPC KK's home on 9 November 2012 violated both specifications, each offense is aimed at a distinct criminal act. Appellant's failure to obey the order of his superior commissioned officer compromises the command's ability to instill good order and discipline within the military, especially in light of appellant's actions prompting the order. His violation of the TRO inhibits the state's ability to protect its citizens, unrelated to any military affiliation. Third, both of these specifications accurately represent appellant's criminality. Fourth, a conviction for both of these specifications does not increase appellant's punitive exposure at all because the military judge merged the offenses for sentencing.

---

[4] This court may grant relief under our Article 66(c), UCMJ, powers to affirm "only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[] correct in law and fact and determine[], on the basis of the entire record, should be approved." *Quiroz*, 55 M.J. at 338 (quoting UCMJ art. 66(c)). This "awesome, plenary, *de novo* power" provides us with the authority to consider all claims of unreasonable multiplication of charges, even if raised for the first time on appeal. *Id.* (quoting *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). *See also United States v. Anderson*, 68 M.J. 378, 386 (C.A.A.F. 2010) ("[A]pplication of the *Quiroz* factors involves a reasonableness determination, much like sentence appropriateness, and is a matter well within the discretion of the CCA in the exercise of its Article 66(c), UCMJ, . . . powers.").

Finally, we find no evidence of prosecutorial overreaching, given appellant's plea of guilty to both specifications (and the dismissal of all charges and specifications to which he pled not guilty).

### Specifications 5 and 6 of Charge IV

We find that Specification 5 of Charge IV (alleging destruction of a television) and Specification 6 of Charge IV (alleging destruction of a laptop computer) are not facially duplicative. Accordingly, by virtue of his unconditional guilty plea, appellant has waived appellate consideration of this issue. *St. John*, 72 M.J. at 687. However, because the destruction of both items took place simultaneously, we find these two specifications constitute an unreasonable multiplication of charges. *See United States v. Collins*, 16 U.S.C.M.A. 167, 169, 36 C.M.R. 323, 325 (1966) ("[W]hen several articles of property are damaged, in violation of Article 109, under circumstances indicating only a single incident or transaction, the damage must be alleged as part of one offense.").

Application of the *Quiroz* factors discussed above weighs in favor of appellant. *See Quiroz*, 55 M.J. at 338-39. Accordingly, we will consolidate Specifications 5 and 6 of Charge IV in our decretal paragraph.

### The Specification of Charge VI and Specification 9 of Charge VII

In the Specification of Charge VI, appellant is charged with maiming SPC KK "by slicing her cheek and forehead with a knife." In Specification 9 of Charge VII, he is charged with assaulting SPC KK with a dangerous weapon (a knife) by "stabbing her in the abdomen, and cutting her cheek and forehead."

The government concedes that aggravated assault with a dangerous weapon is a lesser-included offense of maiming. However, the government asks that we strike the words "and cutting her cheek and forehead" from Specification 9 of Charge VII. Thus appellant would remain convicted of maiming SPC KK by "slicing her cheek and forehead with a knife" as well as of assaulting her with a dangerous weapon by stabbing her in the abdomen.

We accept the government's concession and their request to strike the above language in Specification 9 of Charge VII. *See Palagar*, 56 M.J. at 296-297 (endorsing similar remedy). We find that, under the facts of this case, aggravated assault with a dangerous weapon (knife) is a lesser-included offense of maiming. *See United States v. Pate*, 73 M.J. 352 (C.A.A.F. 2014); *United States v. McLean*, 70 M.J. 573, 576 (A.F. Ct. Crim. App. 2011), *pet. denied*, 70 M.J. 382 (C.A.A.F. 2011). Where one offense is a lesser-included offense of another, the offenses are multiplicious. *Palagar*, 56 M.J. at 296. Dismissing only so much of the lesser

offense as overlaps the greater offense is an appropriate remedy. *See id.* at 296-297. We will provide relief in our decretal paragraph.

After balancing the *Quiroz* factors in this case, we conclude that appellant's convictions for maiming SPC KK by slicing her cheek and forehead and for assaulting her with a dangerous weapon by stabbing her in the abdomen do not constitute an unreasonable multiplication of charges. Although the allegations in both specifications took place during the same incident, each offense is aimed at distinct criminal acts, one concerning the injury to the abdomen and one concerning injuries to the cheek and forehead. As amended, both of these specifications accurately represent appellant's criminality. A conviction for both of these specifications again does not increase appellant's punitive exposure because the military judge merged these offenses for sentencing. Finally, we find no evidence of prosecutorial overreaching.

## CONCLUSION

Upon consideration of the entire record, Specifications 5 and 6 of Charge IV as consolidated into Specification 5 of Charge IV, to read as follows:

In that Sergeant Mario A. Jinetecabarcas, did at or near Helemano Military Reservation, on or about 28 November 2012, willfully and wrongfully destroy by smashing, one television and one laptop computer, both of some value, the property of Specialist KK.

The finding of guilty of that specification as amended is affirmed. The finding of guilty of Specification 6 of Charge IV is set aside, and that specification is dismissed.

We only affirm so much of Specification 9 of Charge VII as extends to the following:

In that Sergeant Mario A. Jinetecabarcas, did at or near Helemano Military Reservation, on or about 6 January 2013, commit an assault upon Specialist KK, by stabbing her in the abdomen with a dangerous weapon, to wit: a knife.

The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the errors noted, the entire record, and applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and the factors set forth in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we are confident the military judge would have adjudged the same sentence.

In evaluating the *Winckelmann* factors, there is no change in the penalty landscape because the military judge merged all of the specifications discussed above for sentencing purposes. 73 M.J. at 15-16. The gravamen of the offenses has not changed and appellant remains convicted of all of the offenses originally charged. *Id*. at 16. Finally, this court reviews the records of a substantial number of courts-martial involving domestic abuse of the nature alleged in this case, and we have extensive experience with the level of sentences imposed for such offenses under various circumstances. *Id.*

The sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are hereby ordered restored.

Judge KRAUSS and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court