# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist SHAWN C. CLARK**
**United States Army, Appellant**

ARMY 20140252

Headquarters, United States Army Alaska
Kurt Bohn, Military Judge
Colonel Tyler J. Harder, Staff Judge Advocate
Colonel Erik L. Christiansen, Staff Judge Advocate (post

For Appellant: Lieutenant Colonel Charles A. Lozano, JA; Major Aaron R. Inkenbrandt, JA; Captain Jennifer K. Beerman, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Timothy C. Donahue, JA (on brief).

31 May 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of attempted rape, attempted kidnapping, disrespect toward a noncommissioned officer, failure to obey an order, four specifications of assault consummated by battery,[1] one specification of assault with a dangerous weapon, and

---

[1] Specification 5 of Charge III alleged that appellant cut the victim on the hand with a "dangerous weapon, to wit: a handheld edged weapon." On appeal, both parties appear to treat this as an aggravated assault. However, the specification does not allege that the handheld edged weapon (commonly referred to as a "knife") was used in a manner likely to cause death or grievous bodily harm, nor does it allege that a "deep cut" was intentionally inflicted. *See Manual for Courts-Martial, United States* (2012 ed.), ¶54.c.(4)(a),(b). Additionally, the parties at trial, and the military judge during the providence inquiry, treated this specification as an assault consummated by battery.

burglary with intent to commit rape, in violation of Articles 80, 91, 92, 128, and 129 of the Uniform Code of Military Justice, 10 U.S.C. §§ 880, 891, 892, 928, and 929 [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for nine years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises two issues, both of which we find do not merit relief.[2] We do address one of the issues raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). The remaining matters personally raised by appellant are without merit.

## BACKGROUND

In the early morning hours of 30 August 2013, appellant, dressed all in black, wearing gloves, armed with a knife, and with a bandana covering his face, went to Private First Class (PFC) TB's barracks room and knocked on the door. As PFC TB unlocked her door and started to open it, appellant shoved the door open, forcing PFC TB backwards. Upon pushing his way through the door, appellant pushed PFC TB further backwards and then "grabbed her by her arms in order to control her."

Appellant intended to rape PFC TB and during the attack, in order to scare his victim, he "displayed" a knife. During the struggle, PFC TB grabbed the knife and cut her hand.

Appellant stands convicted of four different assaults consummated by battery: one for hitting PFC TB with the door, one for pushing PFC TB, one for grabbing PFC TB once he was inside her room, and one for cutting her hand when she grabbed the knife. Furthermore, appellant stands convicted of one specification of aggravated assault for displaying the knife. Appellant personally asserts that the assaults "stem from a continuous course of conduct" and that "[e]ach specification flows into the next."

---

[2] Appellant assigns as error that the military judge used an outdated definition of "force" when explaining the offense of rape to appellant during the providence inquiry. Regardless of the military judge's description of the unlawful force required, after careful review of the record of trial and the stipulation of fact, we find that appellant knew and understood the elements, admitted them freely, and pleaded guilty because he was guilty. *See United States v. Redlinski*, 58 M.J. 117 (C.A.A.F. 2003).

**LAW AND DISCUSSION**

Our superior court has repeatedly held that individual assaults within an uninterrupted scuffle should not be parsed out and made the bases for separate findings of guilty. *See United States v. Flynn*, 28 M.J. 218 (C.M.A. 1989); *see also United States v. Morris*, 18 M.J. 450 (C.M.A. 1984); *United States v. Rushing*, 11 M.J. 95 (C.M.A. 1981). Similarly, we held last year that merger of specifications is appropriate in instances of an ongoing attack comprising multiple assaults "united in time, circumstance, and impulse." *United States v. Clarke*, 74 M.J. 627, 628 (Army Ct. Crim. App. 2015) (quoting *Rushing*, 11 M.J. at 98).

Nonetheless, we find that appellant has forfeited and waived his entitlement to any relief. "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). Such waiver may include "double jeopardy." *United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009). We find waiver for two separate but related reasons.

First, appellant pleaded guilty to these offenses. "An unconditional guilty plea generally waives all defects which are neither jurisdictional nor a deprivation of due process of law." *United States v. Schweitzer*, 68 M.J. 133, 136 (C.A.A.F. 2009) (citation and internal quotations marks omitted). "By pleading guilty, an accused does more than admit that he did the various acts alleged in a specification; 'he is admitting guilt of a substantive crime.'" *United States v. Campbell*, 68 M.J. 217, 219 (C.A.A.F. 2009) (citing *United States v. Broce*, 488 U.S. 563, 570 (1989)).

Second, as part of his pretrial agreement, appellant affirmatively waived "all waivable motions" and specifically agreed to waive motions regarding unreasonable multiplication of charges and multiplicity. "When . . . an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal." *Gladue*, 67 M.J. at 313. Even in cases where the specifications are facially duplicative, "[e]xpress waiver or voluntary consent . . . will foreclose even this limited form of inquiry." *United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F. 1997). Accordingly, while concerns regarding the units of prosecution in this case exist, relief is not required for this waived issue.

Of course, this court may notice waived and forfeited error, and may approve only those findings that "should be approved." *United States v. Nerad*, 69 M.J. 138, 141-42, 146-47 (C.A.A.F. 2010). This is an "awesome, plenary de novo power of review," but one that is also subject to "discretion." *Id*. at 144-45 (citations and internal quotation marks omitted). It is only in whether to exercise this discretionary power that we depart from our dissenting colleague.

Appellant specifically agreed to plead guilty to these offenses as part of a negotiated agreement. Appellant further specifically agreed to waive issues

regarding the unreasonable multiplication of charges and multiplicity. To provide relief in this case would require us to set aside specifications to which appellant specifically agreed to plead guilty and to notice alleged error that he specifically agreed to not raise.

Finally, we note as appellant agreed to plead guilty to these specifications and agreed to waive issues regarding multiplicity and unreasonable multiplication of charges, none of these issues were litigated at trial. Thus, while the *Care* inquiry reasonably raises whether the batteries formed one unit of prosecution, the factual basis for this assertion was never litigated at trial and we are left to review an undeveloped record. Had the parties not treated the matter as waived, additional inquiry may have revealed the unit of prosecution concerns to be without merit, or not. Instead we have a providence inquiry which, while adequately establishing appellant's guilt to the charged offenses, never attempted to answer the question of whether the offenses formed one unit of prosecution.[3] This weighs in favor of accepting appellant's waiver.

While the dissent's proposition that we consolidate the three batteries into one offense and the two assaults involving the knife into another specification is not unreasonable, in our exercise of this discretionary authority, we will instead affirm all five individual assault convictions.

## CONCLUSION

Having found no substantial basis in law or fact to question appellant's pleas, and finding the sentence appropriate, the findings and sentence as adjudged and approved by the convening authority are AFFIRMED.

Judge PENLAND concurs.

HAIGHT, Senior Judge, concurring in part and dissenting in part:

I concur that appellant's convictions for attempted rape, attempted kidnapping, disrespect toward a noncommissioned officer, failure to obey an order, and burglary with intent to commit rape should be affirmed. Furthermore, appellant should remain convicted of assault consummated by battery and aggravated assault

---

[3] For this reason, we find the case distinguishable from *Lloyd*. In that case, our superior court found the in-depth nature of military providence inquiries adequately established that the offenses were *separate*. *Lloyd*, 46 M.J. at 24. We do not read *Lloyd* as standing for the proposition that providence inquires will *always* provide a sufficient factual basis to resolve unit of prosecution issues, especially in circumstances where the parties and the military judge had no reason to inquire into the matter.

with a knife. I only disagree with my fellow judges in how many convictions of assault should be approved.

The majority's declination to merge these offenses perpetuates what I perceive may be an incomplete approach to addressing this particular set of circumstances; that is, that an analysis of the correct unit of prosecution is merely a subset or alternative method of determining whether an unreasonable multiplication of charges has occurred. While the concepts of unit of prosecution, multiplicity, and unreasonably multiplication of charges overlap and address similar concerns and are often addressed simultaneously in case law, they are all three distinct.

The majority views any issue regarding the unit of prosecution for assaults as waived due to appellant's express waiver of motions regarding multiplicity and unreasonable multiplication of charges. Furthermore, the appellant agreed to "waive all waivable motions known to myself or my defense counsel at this time," a provision comparable to one our superior court has found sufficient to waive even those issues not expressly discussed with the military judge. *See United States v. Gladue*, 67 M.J. 311 (C.A.A.F. 2009). However, the unit of prosecution problem "is so plainly presented" here that I would correct the error. *United States v. Chin,* 75 M.J. __, 2016 CAAF LEXIS 312, at *9 (C.A.A.F. 26 Apr. 2016) (citation and internal quotation marks omitted).

"Unit of prosecution" was never mentioned, addressed, or even apparently considered at appellant's court-martial. Apart from appellant's waivers just discussed, the record makes it clear that appellant did not knowingly give up his right to be convicted under the correct unit of prosecution. *See Gladue*, 67 M.J. at 316 (Baker, J., concurring in the result) ("I do not see how we can determine Appellant's plea was knowing and voluntary if we do not assess it in the context in which it was explained on the record to Appellant."). Therefore, despite appellant's guilty plea or any consequent waiver or forfeiture, I would notice this plain and obvious error and merge the assaults.

Multiplicity, a constitutional violation under the Double Jeopardy Clause, occurs if a court, "*contrary to the intent of Congress*, imposes multiple convictions and punishments under different statutes for the same act or course of conduct." *United States v. Teters*, 37 M.J. 370, 373 (C.M.A. 1993). It is well-settled that multiplicity and unreasonable multiplication of charges are distinct concepts. *See United States v. Roderick*, 62 M.J. 425, 433 (C.A.A.F. 2006) ("While multiplicity is a constitutional doctrine, the prohibition against unreasonable multiplication of charges is designed to address prosecutorial overreaching."). The standard for determining multiplicity focuses on the elements of the offenses, whereas the standard for determining an abuse of prosecutorial discretion is reasonableness. *See United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001). The standard for determining the proper unit

of prosecution is neither a comparison between the elements of different statutes nor a question of reasonableness. It is a separate question unto itself.

The relevant question when determining the appropriate unit of prosecution is "whether conduct constitutes one or several violations of a single statutory provision." *Callanan v. United States*, 364 U.S. 587, 597 (1961). This determination is solely one of congressional intent, permission, and allowance. *See United States v. Collins*, 16 U.S.C.M.A. 167, 36 C.M.R. 323 (1966). In military jurisprudence, our superior court has addressed the unit of prosecution for many offenses, to include conspiracy (number of agreements vs. number of criminal objectives), damage to property (number of items damaged vs. incidents of damage), drunken driving resulting in injury (number of victims vs. acts of drunken driving), robbery (number of assaults vs. number of larcenies), and obstruction of justice (number of solicitations to provide false testimony vs. number of witnesses solicited). *See United States v. Pereira*, 53 M.J. 183 (C.A.A.F. 2000); *Collins*, 16 U.S.C.M.A. 167, 36 C.M.R. 323; *United States v. Scranton*, 30 M.J. 322 (C.M.A. 1990); *United States v. Szentmiklosi*, 55 M.J. 487 (C.A.A.F. 2001); *United States v. Guerrero*, 28 M.J. 223 (C.M.A. 1989).

The question in such cases is framed as what was permissible, proper, or allowable vs. impermissible, improper, or not allowed. The analysis was never couched in terms of reasonable vs. unreasonable or one of within discretion vs. abuse of discretion. In other words, the unit of prosecution for a given offense is either correct or incorrect. The Supreme Court addressed this very notion when addressing the appropriate unit of prosecution for the offense of transporting women across state lines (number of women vs. number of transports):

> The punishment appropriate for the diverse federal offenses is a matter for the discretion of Congress, subject only to constitutional limitations, more particularly the Eighth Amendment. Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so? It has not done so in words in the provisions defining the crime and fixing its punishment. Nor is guiding light afforded by the statute in its entirety or by any controlling gloss. . . . Again, it will not promote guiding analysis to indulge in what might be called the color-matching of prior decisions concerned with "the unit of prosecution" in order to determine how near to, or how far from, the problem under this statute the answers are that have been given under other statutes.

> It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and *not unreasonably reach either of the conflicting constructions*. About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it -- when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. . . . It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.

*United States v. Bell*, 349 U.S. 81, 82-84 (1955) (emphasis added).

There is no doubt as to what the unit of prosecution is for the offense of assault under Article 128, UCMJ. "Congress intended assault, as prescribed in Article 128, UCMJ, 10 USC § 928, to be a continuous course-of-conduct type offense and that each blow in a single altercation should not be the basis of a separate finding of guilty." *United States v. Flynn*, 28 M.J. 218, 221 (C.M.A. 1989). While several cases in the past have labeled charges involving an incorrect unit of prosecution as also an unreasonable multiplication of charges, I have been unable to find a case with multiple convictions where the applied unit of prosecution was determined to be incorrect yet the multiple convictions were nevertheless allowed to stand. I find it difficult to see how this court can say that under the circumstances found in this case that multiple convictions "should be approved" when binding precedent unequivocally informs us that separate findings of guilty "should not be" approved. UCMJ art. 66(c); *Flynn*, 28 M.J. 218; *see also United States v. Clarke*, 74 M.J. 627 (Army Ct. Crim. App. 2015).

In *United States v. Campbell*, 68 M.J. 217 (C.A.A.F. 2009), our superior court, when declining to determine the unit of prosecution for possession of child pornography (same images vs. number of different media), found that because appellant pleaded guilty unconditionally to multiple specifications and failed in his burden to show the specifications were facially duplicative, appellant waived his ability to contest on appeal whether he should have been charged with only one specification of his crime. I distinguish this case from *Campbell* on several grounds. First, as explained and acknowledged by the majority, there is no current dispute regarding what the unit of prosecution is in cases such as this; that question has been answered. Second, because appellant pleaded guilty, the record of trial contains a detailed factual basis and providence inquiry that show that the specifications in this case were "'facially duplicative', that is, factually the same," *United States v. Lloyd*,

7

46 M.J. 19 (C.A.A.F. 1997) (citing *United States v. Broce*, 488 U.S. 563, 575 (1989)), in that appellant's attack was uninterrupted and "united in time, circumstance, and impulse." *United States v. Rushing*, 11 M.J. 95, 98 (C.M.A. 1981). Indeed, it can be argued that while each specification, viewed individually, stated an offense, because this was a continuous crime, the cumulative battery specifications failed to state the multiple offenses of which appellant stands convicted. Third, as referenced earlier, even in cases of waived or forfeited error, we are still statutorily required to determine what "should be approved." UCMJ art. 66(c). I believe we should apply the correct unit of prosecution to appellant's criminal misconduct.

Accordingly, I would consolidate the three simple battery specifications into a single specification and the two assaults involving the knife into a single aggravated assault specification. After merger, I would affirm the remaining findings of guilty, reassess the sentence in accordance with *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and affirm the approved sentence.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court