UNITED STATES, Appellee,

v.

Michael T. RUSHING, Private U. S. Marine Corps, Appellant.

No. 36,870.
NCM 78–0827.

U. S. Court of Military Appeals.

May 11, 1981.

For Appellant: Lieutenant Commander Patrick A. Fayle, JAGC, USN (argued); Lieutenant David S. Durbin, JAGC, USNR (on brief).

For Appellee: Lieutenant J. G. Van Winkle, JAGC, USNR (argued); Commander T. C. Watson, Jr., JAGC, USN (on brief).

OPINION OF THE COURT

COOK, Judge:

At a bench trial, a special court-martial judge convicted the accused of seven offenses in violation of the Uniform Code of Military Justice. Asserting three errors relating to two of the offenses, the accused

asks that we dismiss them and remand the record for reconsideration of the sentence on the remaining findings of guilty. One assignment of error warrants relief, which we grant, but it does not justify continuation of review.

### I. *Assignments of error pertaining to Additional Charge I.*

■ The specification of Additional Charge I alleges violation of a general regulation prohibiting possession of phencyclidine, a controlled substance.[1] Two of the assignments of error pertain to the legality of the search of accused's person which resulted in discovery of the substance. The first challenges the validity of the authorization to search on the ground that the information furnished to the authorizing officer, Lieutenant Colonel Richardson, was not provided under oath or affirmation. At the time of our grant of review, that issue was before the Court in other cases. As a result of the Court's action on an application for reconsideration of the decision in *United States v. Fimmano*, 8 M.J. 197 (C.M.A.1980), determination of the matter had been deferred. *See* Memorandum Opinion on Reconsideration by Everett, Chief Judge, 9 M.J. 256, 261 (C.M.A.1980). It is clear, however, that at the time of the search in this case an authorization to search could properly be issued on the basis of information provided by a person not sworn or affirmed. *United States v. Johnson*, 8 M.J. 233 (C.M.A.1980). *See United States v. Stuckey*, 10 M.J. 347 (C.M.A.1981). Thus, this claim of error is without merit.

■ Accused's second assignment of error in regard to the search alleges that Colonel Richardson "injected himself as a partisan" into the investigation and, consequently, lacked the neutrality and detachment required of an official issuing a search warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Staggs*, 23 U.S.C. M.A. 111, 48 C.M.R. 672 (1974).[2] Since our grant of review of the issue, the Court has decided claims of particularized disqualification in a large number of cases incident to determination that a commanding officer is not, because of the variety of his duties and responsibilities, constitutionally deprived of the capability to act as a neutral and detached judicial officer, free of a prosecutorial or police attitude. *See United States v. Ezell*, 6 M.J. 307 (C.M.A.1979). Those cases identified various disqualifying actions. Here, the accused relies upon three circumstances, which, somewhat amplified and restated, are as follows:

(a) At the time he authorized the search, Colonel Richardson was aware of the "accused's prior record" of conduct.

(b) Colonel Richardson knew the person who had reported accused's possession of the prohibited substance, which was identified as "THC" or "T," a common description for tetrahydracannabinol.

(c) When apprised of accused's possession of the substance, Colonel Richardson authorized only his apprehension. He instructed Agent Bedway of the Naval Investigative Service (NIS), to whom he issued the authorization, to request the accused to permit a search of his person; if the accused refused, Bedway was to return to obtain authorization to search accused's person. The accused argues that the colonel's actions demonstrate that he had "concluded [in advance] that he would authorize a search" of accused's person; consequently, when the

---

1. The specification was charged as a violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892.

2. Running through accused's argument is a secondary contention to the effect that Colonel Richardson lacked probable cause to authorize the search because of the insufficiency of the evidence of his possession of contraband and the insufficiency of the evidence of informant's reliability. We discuss the informant's reliability later in the text. As to the possession of contraband, the evidence consisted of personal observation by the informant and a subsequent declaration by the accused regarding the nature of the substance in his possession. *See United States v. Weinstein*, 19 U.S.C.M.A. 29, 41 C.M.R. 29 (1969). We are satisfied the evidence amply supports Colonel Richardson's conclusion that probable cause existed to believe that the substance was in accused's possession.

accused declined to consent to a search of his person, the colonel's authorization of such a search was "clearly not the act of a neutral and detached person."

Possession of prior knowledge of the accused's "record," as specified in (a) above, did not disqualify Colonel Richardson. In *United States v. Ezell, supra*, the Court adhered to the principle that previous possession of unfavorable information about an individual who is the subject of an application to search does not automatically comprise qualification to authorize the search. In that situation, the question is whether the previous information is likely to cause the authorizing officer to abandon his impartiality.

In *United States v. McCarthy*, 7 M.J. 42, 43 (C.M.A.1979), the Court held that a commander was not disqualified to authorize a search because he had previous knowledge that the accused "was awaiting trial for drug charges; that ... a CID report ... [involved him] in other drug offenses; and that several informants had reported him as being involved in drug activity." *See United States v. Ezell, supra* at 331–32 (Cook, J., concurring and dissenting). Here, Colonel Richardson knew of the accused's "general conduct record" and that, at least twice, he had been an unauthorized absentee; he also implied that accused's "conduct since" the "last" absence had not been satisfactory. The nature of this information impresses us, beyond a reasonable doubt, as not being of a kind to incline Colonel Richardson to be so predisposed against the accused as to grant an authorization to search accused's person without regard to whether probable cause existed. We are confirmed in our belief by Colonel Richardson's testimony, on cross-examination by defense counsel, that "based on the information" he had at the time of his authorization to apprehend accused, he "could have" also authorized a search of accused's person.

Like item (a), item (b) involves the impact of prior knowledge on the part of the commander, but it focuses on a different aspect of the authorization to search. Where (a) is concerned with the effect on the impartiality of the commander, (b) deals with use of the information by him to satisfy the legal requirements for a search.

■ Military law sanctions consideration of prior knowledge to determine the requisite reliability of an informant whose unsworn or unaffirmed information is presented to establish probable cause for a search. In *United States v. Miller*, 21 U.S. C.M.A. 92, 93, 44 C.M.R. 146, 147 (1971), one of the informants had been known to the commander for about a year; the commander "considered [him] to be a 'reputable member ... of the battalion'" and at least twice he "had furnished information leading to the seizure of prohibited drugs." Remarking on the commander's reliance upon the report of the informant, the Court described the informant as having "proven reliability." *Id.* at 94, 44 C.M.R. at 148. *See United States v. Land*, 10 M.J. 103 (C.M.A.1980); *United States v. Weekley*, 3 M.J. 1065, 1066 (A.F.C.M.R.1977).

■ Colonel Richardson testified that he considered the informant reliable because of his "past experience with him." He "knew" the informant was a member of his command and that he worked in the unit's dining facility, where he saw him daily. On at least two occasions during the preceding period of 10 months, the informant had reported to him irregularities in payment by diners at the dining hall. On each occasion, Colonel Richardon obtained other information verifying the report, and then he issued an official directive to the mess officer for corrective action. Thus, the informant was "not an unnamed member of the underworld but a known, reputable member of the authorizing officer's command," *United States v. Lidle*, 21 U.S.C.M.A. 455, 457, 45 C.M.R. 229, 231 (1972), and his previous reports had been verified and made the subject of official action. *See United States v. Smallwood*, 22 U.S.C.M.A. 40, 42, 46 C.M.R. 40, 42 (1972). This evidence amply supports Colonel Richardson's conclusion that the informant was reliable.

As to (c) above, Colonel Richardson apparently did not realize that lawful apprehension of an individual justifies a full

search of the person and of articles found on his person. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973); *United States v. Wenzel*, 7 M.J. 95, 97 (C.M.A.1979). At trial, Colonel Richardson was asked by defense counsel whether, at the time he gave the "go ahead to apprehend" the accused, he could have also "given authorization to search him"; the colonel answered that "on the information . . . [he] had . . . [he] could have." Asked why he "didn't . . . go ahead and authorize" a simultaneous search of accused's person, he responded: "Well, there was a possibility that Private RUSHING might permit himself to be searched." He thought that consent by the accused would make things "easier." Whatever one skilled in the intricacies of the law of search and seizure might think of Colonel Richardson's decision to separate his authorization to apprehend from his authorization to search accused's person, we cannot construe it and his later action as evidence that he had abandoned his position as a commanding officer to become a partisan participant in the investigative process. We, therefore, decide this aspect of the second assignment of error against the accused.

II. *The multiplicious nature of the offense alleged in specifications 1 and 2, Charge III.*

■ Accused's third assignment of error asserts that the trial judge erred in denying a defense motion to treat as a single offense, specifications 1 and 2, Charge III. As the ruling was delayed until the end of the Government's case, no issue is present as to the Government's need to meet "exigencies of proof." *United States v. Stegall*, 6 M.J. 176, 177 (C.M.A.1979).

The evidence indicates that, apparently mistaking Private Ponzio for someone else, the accused approached Ponzio from behind, tapped him on the shoulder, and as Ponzio turned to face the accused, the accused struck out at him with his fist. Ponzio "ducked," and the blow struck him in the

head. As Ponzio "took a couple of steps back," the accused "swung at" him with a broken cue stick. Ponzio ducked again and avoided the blow; he then turned and ran. The cue stick was thrown and "pass[ed] . . . [his] head." The accused's act of striking at Ponzio with his fist was charged as one offense (specification 1), and the throwing of the cue stick was charged as another (specification 2). In our opinion, the evidence impels the conclusion that the acts were so united in time, circumstance, and impulse in regard to a single person as to constitute a single offense. *United States v. Stegall, supra; see United States v. Meyer*, 21 U.S.C.M.A. 310, 312, 45 C.M.R. 84, 86 (1972).

As no reasonable likelihood exists of a subsequent challenge to the validity of the findings of guilty of one or the other of the specifications, dismissal of one of them at this time would not disadvantage the Government. Accordingly, we reverse the decision of the Court of Military Review as to specification 1, Charge III, set aside the findings of guilty of that offense, and dismiss the specification. *United States v. Stegall, supra* at 178. Considering the number and nature of the remaining findings of guilty and the sentence adjudged at trial, we perceive no reasonable possibility of benefit to the accused by remand of the record to the Court of Military Review for reassessment of the sentence. *United States v. Holsworth*, 7 M.J. 184 (C.M.A. 1979). Accordingly, we otherwise affirm the decision of the United States Navy Court of Military Review.

EVERETT, Chief Judge (concurring):

Since nothing in the principal opinion is inconsistent with my views as expressed in *United States v. Stuckey*, 10 M.J. 347 (C.M. A.1981), I concur.[1]

FLETCHER, Judge (concurring in the result):

I concur, but feel compelled to write to disassociate myself from any comment in

─────

1. *See* my opinion concurring in the result in *United States v. Young*, No. 35,906 (C.M.A.

1981), and *United States v. Burden*, No. 36,462 (C.M.A.1981).

Judge Cook's opinion that *United States v. Fimmano*, 8 M.J. 197 (C.M.A.1980), is not the law of this Court. The Petition for Reconsideration was denied at 9 M.J. 256 (C.M.A.1980). I suggest notwithstanding Chief Judge Everett's Memorandum Opinion on Reconsideration, 9 M.J. 256, 261 (C.M.A.1980), that *Fimmano* has great vitality as explicated by Chief Judge Everett in his lead opinion in *United States v. Stuckey*, 10 M.J. 347 (C.M.A.1981), and as understood by Judge Cook, set forth in his opinion concurring in part and dissenting in part in *United States v. Stuckey, supra.*