# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, AND SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class ALVIN W. BRADLEY**
**United States Army, Appellant**

ARMY 20150752

Headquarters, U.S. Army Fires Center of Excellence and Fort Sill
Wade N. Faulkner, Military Judge
Colonel David E. Mendelson, Staff Judge Advocate

For Appellant: Mr. William E. Cassara, Esquire (argued); Captain Ryan T. Yoder, JA; Mr. William E. Cassara (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Mr. William E. Cassara (on reply brief).

For Appellee: Captain K.J. Harris, JA (argued); Lieutenant Colonel Erik. K. Stafford, JA; Major Virginia Tinsley, JA; Captain K.J. Harris, JA (on brief).

29 January 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge:

Sergeant First Class Alvin W. Bradley, appeals his convictions of several sexual offenses involving his stepdaughter. Appellant raises six assignments of error, of which two merit discussion.[1] First, we address whether the military judge created an ambiguous verdict as to one of the specifications which would preclude this court from reviewing that finding. We conclude that the finding as to that specification was ambiguous and give relief in our decretal paragraph. Second, we examine whether the military judge committed an error by considering improper propensity evidence. We conclude that, though the military judge committed error,

---

[1] Appellant also raises one matter pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which, after due consideration, merits no discussion or relief.

the error was waived and, in any event, did not result in a material prejudice to a substantial right.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of three specifications of committing a lewd act on a child and three specifications of sexual assault of a child, in violation of Article 120b, Uniform Code of Military Justice, 10 U.S.C. 920b (2012) [UCMJ]. The military judge acquitted appellant of one specification of committing a lewd act on a child and a charge of providing alcohol to a minor. The court sentenced appellant to a dishonorable discharge, confinement for twenty-three years, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

**BACKGROUND**

From December 2013 to August of 2014, when the circumstances giving rise to this case occurred, AF was the 14 year-old stepdaughter of appellant. AF lived with her mother JB, appellant, and her two younger half-sisters.

At a church event in September 2014, PW (the church's youth pastor) noticed that AF appeared to have been cutting herself. PW asked AF what was going on and she disclosed that she had been sexually assaulted by her stepfather. PW brought over his wife and a social worker to talk with AF. That evening, AF told JB what she had told PW. JB told AF she needed to fix this. JB called PW and told him her daughter was lying and asked him not to report the disclosure. PW believed he had a mandatory duty to report and called the police.

During the course of the investigation AF told the police, case workers and PW's wife that she had lied when she told PW about being assaulted. AF testified at trial that she recanted because of pressure from her family.

During trial, AF testified about several distinct incidents where her stepfather committed sexual acts and assaulted her. The first was around December 2013, when appellant winked at her and pinched her butt while she was washing dishes. After that, in January or February 2014, appellant called her over and said he would teach her some self-defense. He instructed her to sit on his lap and after showing her a self-defense move he told her she could also stun someone with a kiss. He had her practice the stun-by-kiss move. Appellant then touched her inner thigh and her vagina over her clothes. This escalated to "wrestling" on the floor, during which time appellant penetrated her vagina with his penis.

AF described another occasion, in March 2014, where appellant again asked her to sit on his lap so he could show her some pictures. AF testified:

2

> [A]nd he had rubbed his hands kind of feeling up my body
> to my chest.  And he said he noticed that my nipples were
> hard but it was a little bit cold outside. . . . And he slipped
> one of his hands underneath my shirt that I was wearing
> and started feeling my bare breast. . . .

AF then testified that appellant bent her over the coffee table, pulled her shorts down and put his penis in her anus.  AF described that it hurt and she cried. Appellant then stopped and calmed her down.

The trial counsel asked a follow up question:

> TC: While you were sitting on your stepfather's lap, you
> said that he was touching your breasts.  Was that over the
> clothes or under?
>
> AF: The first time was over and then the second time
> when he moved his hand under is when he touched under
> the clothes.

AF also detailed an occasion where she was crying in her room and appellant came in and asked her what was wrong.  Appellant told her he knew how to make her feel better.  AF testified that appellant digitally penetrated her vagina and then using a condom inserted his penis in her vagina.

The final assault occurred at the end of August 2014.  AF and appellant were hanging out in the garage drinking.  AF's mother had gone to bed.  AF described how appellant bent her over a stool and penetrated her anus with his penis.  Upon hearing the outer door open appellant lay on the floor and pretended to be passed out.  JB testified that she came into the garage and her husband was passed out on the floor and AF was attempting to perform fellatio on her passed-out husband. AF's reaction was to say "I'm sorry," and, according to JB, acted guilty.

In a pretrial motion, the government sought to introduce evidence of each child molestation charge under Military Rule of Evidence [M.R.E.] 414 to demonstrate appellant's propensity to commit other sexual misconduct.  Trial Defense counsel did not file a response to the government motion.  During the Article 39a hearing prior to arraignment the military judge stated:

> MJ:  Appellate Exhibit 1 is a government motion
> regarding admissibility of M.R.E. 414 evidence.  I did not
> receive a defense response.  I guess before we get to the
> motions let me summarize the 802 session.  Prior to trial
> this morning I conducted an R.C.M. 802 session, present

3

> at which were both trial counsel, defense counsel, and myself and we discussed the following issues: the first was with respect to the government's 414 motion. The defense did not submit a response and they indicated in the 802 that they conceded the merits of the motion. Given the defense's concession, provided the government meets the requirements under the law for consideration of 414 evidence I will make the necessary findings at the conclusion of the evidence since the government is only asking for 414 evidence of charged offenses. If the government meets the standard I'll make the required findings at the close of evidence and will instruct the members on how they can consider that type of evidence . . . . So thus far does either side disagree with my characterization of the 802 session? Would either side like to add anything?
>
> DC: No, Your Honor.
>
> TC: No, Your Honor.

The trial counsel did not mention the motion, propensity evidence, or M.R.E. 414 again. The government did not argue it in the opening statement. At the close of the defense's case the MJ stated:

> MJ: As it relates to the 414 issue--it is always kind of weird when the offenses are just the charged offenses but the court finds the accused is charged with an act of child molestation as defined by M.R.E. 414. The evidence has been proffered today as it relates to all those charged offenses is evidence of the accused's commission of other offenses of child molestation; and the court finds the evidence relevant under M.R.E. 401 and M.R.E. 402. And I have conducted a prejudice analysis under M.R.E. 403[.] I do not find that the probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issue. Therefore, when I get to findings I will consider the evidence for the proper purposes as allowed by M.R.E. 414.

The defense counsel did not object. The government did not mention propensity in the closing argument.

4

The defense theory of the case was that AF was a liar, there was no corroboration of any of AF's claims, and several witnesses impeached AF's credibility. The defense argued AF could not be telling the truth because she could not identify a very visible wart on appellant's penis. The Defense also argued AF victimized appellant when she attempted to perform oral sex on appellant as he laid passed out on the garage floor.

## LAW and DISCUSSION

### A. Exception of "divers occasions" from Specification 4 of Charge I

Specification 4 of Charge 1 alleged appellant touched AF's breast on divers occasions between 1 February 2014 and 1 May 2014. In finding appellant guilty of this offense, the military judge excepted the language "on divers occasions" and narrowed the time frame from 1 March 2014 through 31 March 2014. Appellant argues that this created an ambiguous verdict which would preclude the court of conducting a review pursuant to Article 66(c), UCMJ.

In *United States v. Walters*, our superior court held that a Court of Criminal Appeals could not review a conviction for factual sufficiency under Article 66, UCMJ, when the appellant was charged with committing an illegal act "on divers occasions," but was found guilty at trial by exceptions and substitutions to a single unspecified act. 58 M.J. 391, 396-97 (C.A.A.F. 2003). Our authority to conduct a factual review is only for things of which the appellant has been found guilty; we do not have the authority to review an acquitted specification for factual sufficiency. *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017).

> [A]ny findings by exceptions and substitutions that remove the 'divers occasions' language must clearly reflect the specific instance of conduct upon which [the trial court's] modified findings are based. That can generally be accomplished through reference in the substituted language to a relevant date or other facts in evidence that will clearly put the accused and the reviewing courts on notice of what conduct served as the basis for the findings.

*Walters*, 58 M.J. at 396.

Appellant argues that the evidence shows two separate times where AF testified he touched her breast. One touching over the clothes and one under the shirt. Both of these instances were within the relevant March 2014 time period. If these are two separate incidents, appellant would be correct and we would be unable to distinguish which one was the offense of which the military judge found the

appellant guilty. If however, as the government contends, the under the shirt touching and over the shirt touching were part of one offense, then the findings are not ambiguous.

Therefore, the question we are presented is whether, as a matter of law, these facts constitute one offense or two offenses. If one offense, we may affirm; if two offenses, we must set aside the conviction. There are two ways allegations of two touchings would constitute one offense: the first would occur if one of the alleged touchings was factually or legally insufficient to independently sustain a conviction for committing a lewd act on a child; the second would occur if the unit of prosecution for committing a lewd act encompasses acts that are connected in some way (for example, close in time, circumstance and impulse). Is a lewd act upon a child a continuous-course-of-conduct-type offense or is it a discrete-act offense?

To determine the appropriate unit of prosecution one looks to see "whether conduct constitutes one or several violations of a single statutory provision." *Callanan v. United States*, 364 U.S. 587, 597 (1961). This determination is one of congressional intent, permission, and allowance. *See United States v. Collins*, 16 U.S.C.M.A. 167, 36 C.M.R. 323 (1966). To find the congressional intent one first looks to the words of the statute. Are there words within the statute which indicate what exact act was intended to be criminalized? "In this context, the course of each crime or intended unit of prosecution is best gauged by the duration of the specific intent required for commission of the offense." *United States v. Flynn*, 28 M.J. 218, 221 (C.M.A. 1989) (citing *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 225, (1952)).

The Court of Appeals for the Armed Forces (CAAF) has addressed the unit of prosecution for many offenses, to include assault, conspiracy, damage to property, drunken driving resulting in injury, robbery, and obstruction of justice. *See Flynn*, 28 M.J. at 221; *United States v. Pereira*, 53 M.J. 183, 184 (C.A.A.F. 2000); *Collins*, 16 U.S.C.M.A. at 169, 36 C.M.R. at 325; *United States v. Scranton*, 30 M.J. 322, 326 (C.M.A. 1990); *United States v. Szentmiklosi*, 55 M.J. 487, 491 (C.A.A.F. 2001); *United States v. Guerrero*, 28 M.J. 223, 227 (C.M.A. 1989). In each case, the determination turned on intent as seen through the *actus reus*. "[A] distinction is laid down in adjudged cases and in textwriters between an offence continuous in its character [. . .] and a case where the statute is aimed at an offence that can be committed uno ictu." *United States v. Neblock*, 45 M.J. 191, 198 (C.M.A. 1996) (citing *Blockburger v. United States*, 284 US 299, 302 (1932)).

Article 120b provides, "any person subject to this chapter who commits a lewd act upon a child is guilty of sexual abuse of a child[.]" UCMJ art 120b(c). A "lewd act" is "any sexual contact with a child." UCMJ Art 120b(h)(5)(A). "Sexual contact" is touching or causing to touch, either directly or through the clothing any body part of any person, if done with intent to arouse or gratify the sexual desire of

any person.[2] UCMJ art. 120b(h)(1); UCMJ art. 120(g)(2)(B). The use of the singular in the statute's text (a lewd act) and the definition of a lewd act (any sexual contact) imply that a single sexual contact (e.g. touching the breast of a child) establishes the offense. The requirement that the touching must be done with "intent to arouse or gratify the sexual desire of any person" is another indicator that this is a single-act-type offense. The specific *mens rea* needed to separate unlawful conduct from lawful conduct connects the event of the touching with a moment in time and not a duration of time.

Further, though a case of first impression for this specific article under the UCMJ, similar crimes have been found to be discrete-act crimes. The Court of Appeals for the Armed Forces (CAAF) found in *Neblock* that "committing 'indecent acts or taking liberties with a child' is not a continuous-conduct crime as a matter of military substantive law." 45 MJ at 198. This court has also concluded that "the unit of prosecution for sexual assault is each assault." *United States v Schupp*, 2017 CCA LEXIS 466, at *3 (Army Ct. Crim. App. 12 Jul. 2017), *pet. denied* , __ M.J. __, 2017 CAAF LEXIS 1003 (C.A.A.F. 25 Sept. 2017).

The government has argued that the lewd act, or touching, charged in this case is akin to assault[3] and therefore a continuous-course-of-conduct offense. The analogy fails; simple assault is a general intent crime and, as our superior court in *United States v. Flynn* distinguished aggravated assault from simple assault because of the heightened *mens rea* requirement, the specification in this case is also a specific intent crime. 28 M.J. 218, 221 (C.M.A. 1989).

Under the facts and circumstances in this case, where there was evidence of a touching of the breast over the shirt and one under the shirt, either of which could form the basis for a unique specification of sexual abuse of a child by committing a lewd act, we are unable to conclude which touching constituted the military judge's finding of guilty. Acknowledging both touches occurred on the same day, there is no time span in the record for us to determine the time between the two touches.

---

[2] Alternatively, it is also a sexual contact if the touching is to the genitalia, anus, groin, breast, inner thigh, or buttocks, with the intent to abuse, humiliate, or degrade any person. UCMJ 120(g)(2)(A).

[3] The government is correct that the CAAF has repeatedly held that assault is a continuous-course-of-conduct-type offense and that each blow in a single altercation should not be the basis of a separate finding of guilty. *United States v. Morris*, 18 M.J. 450, 451 (C.M.A. 1984); *United States v. Rushing*, 11 M.J. 95, 98 (C.M.A. 1981). Though the government cites *United States v. Clarke* for this proposition, the government ignores the language in that same case that distinguishes the unit of prosecution for assault charged under Article 128, UCMJ, with the "specialized assaults charged under Article 120 or 134." 74 M.J. 627, 628 (Army Ct. Crim. App. 2015).

7

Instead, the evidence shows there was a first touch and a second touch that could have happened within seconds, minutes, or hours. We cannot speculate about the time between the touches. Therefore we cannot conduct our review under Art 66 and must dismiss Specification 4 of Charge 1.

### B. *Military Rule of Evidence 414* and Propensity

In *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), our superior court ruled the use of charged misconduct and propensity evidence to prove other charged misconduct pursuant to Mil. R. Evid. 413 was improper. Although *Hills* involved an improper instruction, the CAAF in *United States v. Hukill* extended the reasoning of *Hills* to military judge alone cases. 76 M.J. 219, 222 (C.A.A.F. 2017). In *United States v. Hoffman* this court examined what happens when defense waives the error by stating no objection to the Mil R. Evid. 414 instruction at trial. 76 M.J. 758, 764-67 (Army Ct. Crim. App. 2017). As *Hoffman* discusses waiver in a members case applying *Hills*, we are left with how waiver impacts the issue of a military judge alone case.

### 1. Waiver

In general, a waived error cannot be actioned on appeal. "Waiver" is the "intentional relinquishment or abandonment of a known right," which would preclude appellate review of an issue. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citations omitted). By contrast a forfeited issue is reviewed for plain error. *Id.*

Based on the facts in this case, appellant waived his objection to the military judge's consideration of evidence under Mil. R. Evid. 414. The government filed a motion to introduce evidence of each child molestation charge under M.R.E. 414 to demonstrate appellant's propensity to commit other sexual misconduct. Appellant's trial defense counsel did not file a response to the government motion. The military judge discussed the lack of a response and on the record stated that the defense counsel had conceded the motion during a Rule for Court-Martial [R.C.M.] 802 session. The military judge gave the defense counsel an opportunity to correct him if that was wrong or to add anything he overlooked. The trial defense counsel declined to add anything, nor did he object to the military judge's characterization that the defense conceded the motion. This constitutes waiver.

### 2. Plain Error

Even if the waiver was converted to forfeiture–either because the law was considered settled or the concession of the motion by defense at the R.C.M. 802 session is not considered waiver–appellant cannot establish that he can meet all of the prongs of the plain error analysis. When an appellant "fail[s] to object to the

military judge's propensity instruction at trial, we review for plain error." *United States v. Guardado*, 77 M.J. __, 2017 CAAF LEXIS 1142, at *7 (C.A.A.F. 12 Dec. 2017) (citing *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017). Under plain error review, we grant relief where appellant has demonstrated: "(1) there was error; (2) the error was plain and obvious; and (3) the error materially prejudiced a substantial right of the accused. *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011) (citation omitted). "[F]ailure to establish any one of the prongs is fatal to a plain error claim." *United States v. Oliver*, 76 M.J. 271, 275, (C.A.A.F. 2017) (quoting *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006)). The CAAF has found that using propensity evidence of other charged conduct under M.R.E. 414 is an error of a constitutional dimension. *Hills*, 75 MJ at 356; *Hukill*, 76 M.J. at 222 ("The same constitutional concerns exist if, in a military judge-alone trial, a military judge uses charged conduct as propensity evidence under M.R.E. 413."). "Once [appellant] meets his burden of establishing plain error, the burden shifts to the Government to convince us that this constitutional error was harmless beyond a reasonable doubt." *United States v. Paige*, 67 M.J. 442, 449 (C.A.A.F. 2009) (quoting *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005)).[4]

Here, assuming waiver does not apply, a plain error analysis would apply to the military judge's admission of evidence under Mil. R. Evid. 414. Under this analysis, we would find the error was plain and obvious. To show the error materially prejudiced a substantial right of the accused appellant must demonstrate "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 81-82 (2004) (citation omitted); *see Hills*, 75 M.J. at 357-58 (citations omitted). Appellant has not met this hurdle for a number of reasons.

First, the government, despite moving prior to entry of pleas to allow for consideration of propensity evidence under Mil. R. Evid. 414, did not make use of propensity evidence a centerpiece of its case. The military judge deferred his decision on the admissibility and use of Mil. R. Evid. 414 evidence until the close of evidence. At that close of evidence, the military judge stated that he would "consider the evidence for the proper purposes as allowed by M.R.E. 414" without further elaboration. During closing argument, the government did not ask the military judge to use propensity evidence for any specification in considering any other specification. In short, propensity did not play a role in the government's presentation of its case.

---

[4] This case is distinguishable from both *Hills* and *Hukill* in that both of those cases involve preserved error. When constitutional error is preserved, an appellate court tests to see if the error was harmless beyond a reasonable doubt. *Hills*, 75 M.J. at 352.

Second, the government's case was strong without any use or mention of propensity. The evidence showed an escalating course of behavior by appellant against AF. AF acted out as a result of this sexual abuse by cutting herself. AF had no motive to fabricate the allegations. Though the case hinged on the testimony of AF, several aspects of her testimony were corroborated by other evidence. For example, as to the last incident, appellant's wife confirmed appellant was passed out, corroborating AF's claim that appellant "passed out" and fell to the floor when he heard JB approaching the garage. JB's testimony thus corroborated that some form of sexual activity was taking place between appellant and AF in the garage. JB also testified that AF stated, soon after this discovery, that this was not the first such incident with appellant and, on one occasion, appellant had approached AF with a condom. In addition, the government established the time, opportunity and location of each the incidents. The incident in the garage also appellant's opportunity to be alone with AF. Likewise, testimony from AF and appellant established that appellant was in the home during the day, at times where AF was home schooled.

Third, the defense case was weak. The defense attacked AF's credibility with prior inconsistent statements, character evidence, and the theory (which we find implausible under the facts here) that fourteen-year-old AF was the sexual aggressor taking advantage of her passed-out stepfather during the incident in the garage. These avenues of attacking AF were not particularly effective as they did not establish a motive for AF to fabricate the allegations. By contrast, appellant and his wife had a significant motive to fabricate given the consequences if appellant were to be found guilty of the offenses.

JB acknowledged appellant was the primary earner in the family and the loss of his income would be difficult. JB testified she told AF to "fix this" by contacting PW to say the allegations were untrue. JB later begged PW to not report AF's allegations to authorities based on JB's belief AF was lying. Rather than bolstering appellant's case, JB's testimony corroborated AF's testimony that she was put under pressure to recant her allegations.

Appellant elected to testify, thus providing the military judge the opportunity to weigh the appellant's credibility against that of AF and other witnesses. Appellant denied any inappropriate conduct ever occurred with AF. As to the last incident in the garage—the only incident witnessed by a third party (JB)—appellant testified he was passed out and had no memory of seeing AF. On cross-examination, he acknowledged his belief that AF assaulted him and that it was upsetting to him that he "allow[ed] his daughter to take advantage of me while [I was] passed out." As our superior court has recognized, an accused who testifies does so at his own peril. *See United States v. Pleasant*, 71 M.J. 709, 712-13 (C.A.A.F. 2012). "When a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." *Id.* (citing *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004)). Here, the military judge obviously

disbelieved appellant's denial of doing anything inappropriate in the garage. In this context, appellant's general denials of any other inappropriate conduct could easily be dismissed by the factfinder.

Upon a review of the entire record, appellant fails to establish that there was a reasonable probability the results would have been different in the absence of the military judge consideration of evidence under Mil. R. Evid. 414.

Though the appellant cannot demonstrate plain error, we are convinced that in this case the use of charged conduct as propensity evidence by the military judge was harmless beyond a reasonable doubt. Considering the overwhelming strength of the government's case and the weak defense case, the propensity evidence did not contribute to the findings of guilty or appellant's sentence, and any error was harmless beyond a reasonable doubt.

## CONCLUSION

Upon consideration of the entire record, the finding of guilty of Specification 4 of Charge I is SET ASIDE and DISMISSED.

The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the errors noted, the amended findings, the entire record, and in accordance with the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013), we AFFIRM only so much of the sentence as provides for a dishonorable discharge, confinement for twenty-two years, and a reduction to the grade of E-1. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision, are ordered to be restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge BURTON concurs.

HAGLER, Judge, dissenting in part and concurring in part:

I respectfully dissent from the majority's decision to set aside Specification 4 of Charge I. Contrary to the lead opinion, I do not believe this court must find lewd acts with a child to be a "continuous-course-of-conduct" offense to identify what conduct served as the basis for appellant's conviction.

The central question here is whether the military judge's findings "clearly reflect the specific instance of conduct upon which [his] modified findings are based" and "put the accused and the reviewing courts on notice of what conduct served as the basis for the findings." *United States v. Walters*, 58 M.J. 391, 396 (C.A.A.F. 2003). In *Walters*, the CAAF was concerned with the impact of an

11

ambiguous finding on two issues: first, the service court's ability to review a conviction for factual sufficiency; and second, an accused's double jeopardy protections. *Id.* at 397. I conclude the military judge's modified findings satisfies the CAAF's concerns in both regards and would therefore affirm the military judge's finding of guilt as to this specification.

Relying on *Walters*, appellant asserts that: 1) evidence was admitted of two separate instances of him touching his stepdaughter's breast–once over her shirt and once under her shirt–and that by excepting "divers occasions," the judge acquitted appellant of one of these touchings; and 2) it is impossible for this court to determine of what conduct appellant was found guilty. It is important to note how the instant case differs from the "narrow circumstance" presented by *Walters*, both in their underlying facts and in how the factfinder modified the findings in each case.

In *Walters*, evidence was admitted on potentially six separate instances of conduct on varying dates and times, and the panel found the accused guilty of only one instance. Here, there was no testimony about appellant committing multiple, factually distinct acts of breast-touching over several months. The record is clear that appellant touched his stepdaughter's breast while she was sitting on his lap in the family's garage in March 2014. As there was no evidence appellant did so on any other distinct occasion, we have no need to speculate–as an appellate court would have done in *Walters*–about the conduct of which the appellant was found guilty or not guilty.

Also the panel in *Walters* simply substituted "one occasion" for "divers occasions," without further clarifying which of the six separate instances was the "one occasion." *Id.* at 394. Here, the military judge excepted "divers occasions" and, as instructed by *Walters*, narrowed his finding to include only 1 through 31 March 2014, thereby excluding February, April, and 1 May 2014. This effect of this modification is twofold.

First, it focuses our review solely on the occasion that served as the basis for the military judge's finding of guilt. It is unambiguous from the record that the military judge found appellant guilty of his conduct on the occasion when his stepdaughter was sitting on his lap in the garage in March 2014.

Second, the modification tends to show the military judge had no intent to acquit appellant of any touching in March 2014. There is no indication in the record that the military judge considered these acts to be two separate offenses. As noted above, they were not factually distinct in time or location, as was the case in *Walters*. Both acts occurred on the same occasion–literally in one sitting. Rather, the judge's removal of "divers occasions" follows logically from the fact that there was no evidence offered of separate acts over an extended or considerable period of time, a conclusion consistent with the R.C.M. 307's discussion of "divers

occasions."[5] Appellant's position requires us to read ambiguity into the modified finding, even though the judge specifically narrowed the timeframe of the specification to include only the month of March. This modification lends clarity, not ambiguity, to his finding.

In reviewing the case under Article 66, we are not required to determine whether the military judge found appellant guilty of touching AF's breast over her clothes or under her clothes. Despite appellant's invitation, we should not speculate whether the military judge intended to do so. That fact was not an element of the offense as charged. The evidence in the record supports beyond a reasonable doubt that he did both, during March 2014, and the military judge's modified findings are entirely consistent with this conclusion. I find no basis in the record to support appellant's assertion that the military judge intended to find appellant not guilty of any touching of his stepdaughter's breast in March 2014.

Regarding the concern expressed in *Walters* over double jeopardy, the military judge's modified finding provides adequate protection to the appellant. He is protected against subsequent prosecution for touching his stepdaughter's breast in March 2014, conduct for which he was convicted. He is also protected against further prosecution for any alleged touching in February, April, or on 1 May 2014, of which he was acquitted.

I do not believe we must categorically treat lewd acts with a child as a continuous-course-of-conduct-type offense to determine, in this case, what conduct served as the basis for appellant's conviction. We have sufficient information from the record and from the military judge's modified findings. Therefore, I dissent on this issue, and for the reasons listed above, would affirm the findings of guilty as well as the sentence as adjudged and approved.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[5] *See* R.C.M. 307(c)(3) discussion (In alleging an offense, "[w]hen the acts specified extend(s) over a considerable period of time it is proper to allege it (or them) as having occurred, for example, 'from about 15 June 1983 to about 4 November 1983,' or 'did on divers occasions between 15 June 1983 and 4 November 1983.'").