# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MORRIS, POND and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist SHERWOOD E. REED**
**United States Army, Appellant**

ARMY 20240321

Headquarters, 7th Infantry Division
Robert E. Murdough, Military Judge
Lieutenant Colonel Sean P. Fitzgibbon, Special Trial Counsel

For Appellant: Lieutenant Colonel Autumn R. Porter, JA; Jonathan F. Potter, Esquire; Major Robert W. Rodriguez, JA; Captain Jessica A. Adler, JA (on brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Vy T. Nguyen, JA; Major Austin L. Fenwick, JA (on brief).

3 December 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

JUETTEN, Judge:

Appellant assaulted his wife, ████, by striking her with the back of his hand during an argument in their apartment. The niece of appellant's wife, ████, who also lived in the apartment intervened to separate appellant and his wife, but appellant pushed and pulled ████ out of his way. Appellant then assaulted his wife again by punching her while she was on the phone with emergency dispatchers. Based on these acts, appellant was charged with three specifications of domestic

violence,[1] in violation of Article 128b, Uniform Code of Military Justice, 10 U.S.C. § 928b [UCMJ].[2]

A military judge, sitting as a general court-martial, subsequently accepted appellant's plea of guilty to those three specifications. In accordance with a plea agreement, the military judge sentenced appellant to a bad-conduct discharge, 180 days of confinement,[3] and a punitive reprimand.

Appellant now raises one assignment of error: that his separate convictions for assaulting his wife are multiplicious and in violation of the protections against Double Jeopardy afforded by the Fifth Amendment. We disagree.[4]

## BACKGROUND

Appellant assaulted his wife twice, and ▮▮▮▮ once, one afternoon in December 2023. Appellant, his wife, and ▮▮▮▮, who resided with appellant and his wife, were gathered in the primary bedroom of appellant's home where he was playing a multi-player video game with others online. At some point, appellant's wife began trying to speak with appellant, who ignored her and referred to her as a "b****" over his headset to other online game players. This prompted appellant's wife to approach appellant, remove his headset, and ask appellant to repeat what he had said. Appellant responded by slapping his wife across the face with the back of his hand. Immediately after appellant slapped his wife, ▮▮▮▮ "got in between

---

[1] Appellant was also charged with three more specifications of domestic violence alleged on different dates, for a total of six specifications, in violation of Article 128b, UCMJ. However, those three specifications were dismissed pursuant to a plea agreement.

[2] ▮▮▮▮ was "related by marriage" to appellant, and resided with him and his wife. As such, she was an "immediate family" member of appellant. *Manual for Courts-Martial, United States* (2024 ed.) [*MCM*], pt. IV, ¶ 78a.c.(4); Executive Order 14,026, 87 Fed. Reg. 4,764 (January 26, 2022). We also note that she was appellant's legal dependent at the time of the charged misconduct.

[3] Appellant was sentenced to 60 days of confinement for striking his wife's head with his hand (Specification 4 of The Charge), 30 days of confinement for pushing and then pulling ▮▮▮▮ his immediate family member (Specification 5), and 180 days of confinement for striking his wife on the head with his fist (Specification 6), to be served concurrently.

[4] We have given full and fair consideration to the matter personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine it warrants neither discussion nor relief.

[them] as a way to separate [the pair,]" to prevent the situation from escalating. Appellant "decided to move [████████ out of the way by pushing and pulling her . . . ." so that he could "be closer to [his wife]" as "[a]t the time, [he] was still in a rage, and [he] didn't want anybody getting between [himself] and [his wife] . . . ." "[R]ight after . . ." appellant succeeded in moving████ he punched his wife's head. Appellant acknowledged that the described assaults occurred in the same spot in his home and within "a couple of seconds, a couple of minutes" of the others.

Prior to appellant's guilty plea, where the above information was elicited, appellant moved to dismiss either of the specifications pertaining to his wife on the grounds that they were multiplicious. The military judge deferred ruling until after findings were entered.

After finding appellant guilty of the three specifications of domestic violence, the military judge turned to the tabled multiplicity motion. Citing to this court's prior decision in *United States v. Clarke*, 74 M.J. 627 (Army Ct. Crim. App. 2015), pet. denied 74 M.J. 459 (C.A.A.F. 2015), defense counsel argued appellant had been convicted of a "continuous course of conduct" offense for which only one conviction could stand. The military judge asked the trial counsel if the two assaults were "connected in impulse," to which the trial counsel provided a partial answer, "the intent was the same. I'll grant you that." Trial counsel countered that the offense of domestic violence constituted a specialized assault, for which the appropriate unit of prosecution was each individual blow and, additionally, that the modality of harm for the pertinent specifications was different.[5] The trial counsel's argument included that "[t]his was not an uninterrupted act."

The military judge denied appellant's motion. In doing so, he found persuasive dicta in an unpublished opinion, *United States v. Malone*, ARMY 20230151, 2024 CCA LEXIS 217 (Army Ct. Crim. App. 23 May 2024) (mem. op.), suggesting Article 128b, UCMJ, offenses were akin to specialized assaults in which each touching or strike within a continuous course of conduct could be charged as a separate offense. Relying on the unpublished opinion in *Malone*, the military judge concluded:

> The two strikes inflicted on ████ and that form the basis for Specifications 4 and 6 of the charge as found guilty in this case, are factually dissimilar from the type of assault described in *Clark[e]*, which was an uninterrupted attack united in time, circumstance, and impulse. Specifically, in this case, the attack was interrupted by the intervention of

---

[5] However, the government acknowledged that appellant's "intent [behind the slap and punch] was the same."

> a third party who ended up becoming a second victim. This interruption provided the accused an opportunity to withdraw, yet instead, he began the attack anew. Finding that the applicable unit of prosecution in this case is the separate strikes, the defense's multiplicity motion fails.

After appellant's trial, this court sitting en banc reversed the panel decision the military judge found persuasive. *United States v. Malone*, 85 M.J. 573 (Army Ct. Crim. App. 2025).

## LAW AND DISCUSSION

This court reviews preserved challenges for multiplicity de novo.[6] *United States v. Paxton*, 64 M.J 484, 490 (C.A.A.F. 2007). In determining whether charges are multiplicious, this court will look to both "the factual conduct alleged in each specification and the providence inquiry conducted by the military judge at trial." *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004) (internal quotation marks omitted) (citation omitted).

The issue of multiplicity before us concerns whether "the government [has] charge[d] a defendant twice for what is essentially a single crime." *United States v. Forrester*, 76 M.J. 479, 484-85 (C.A.A.F. 2017) (internal quotation marks omitted) (citation omitted). For the species of multiplicity raised in appellant's case – "multiple violations of the same statute . . . predicated on arguably the same criminal conduct" – this court must identify the allowable unit of prosecution for the offense. *Id.* at 485 (internal quotation marks omitted) (citation omitted). The allowable unit of prosecution for domestic violence, like assault, is "the number of overall beatings the victim endured rather than the number of individual blows suffered." *Clarke*, 74 M.J. at 628; *accord Malone*, 85 M.J. at 584 ("Because Article 128b, UCMJ, subsumes the elements of Article 128, UCMJ, in defining a 'violent offense,' this unit of prosecution also applies to the . . . domestic violence specifications of which appellant was convicted."). As such, we must determine whether appellant's two strikes against his wife constituted "an uninterrupted attack . . . 'united in time, circumstance, and impulse' . . . ." *Clarke*, 74 M.J. at 628 (quoting *United States v. Rushing*, 11 M.J. 95, 98 (C.M.A. 1981)). We conclude they are not and thus may be charged separately.

---

[6] Unlike in *Malone*, and contrary to appellee's assertion, due to the unique circumstances of a deferred ruling in a guilty plea, we find appellant preserved his multiplicity objection at trial. *Contra* 85 M.J. at 581. Therefore, we need not first determine whether the charges were facially duplicative in order to conduct a plain error review.

While the military judge committed error in finding "that the applicable unit of prosecution in this case is the separate strikes[,]"[7] the error was not because the military judge did anything wrong, but instead because he was persuaded by this court's since reversed panel opinion in *Malone*. However, the "tipsy coachman" doctrine[8] is an applicable principle of appellate law to this case, allowing an appellate court "to affirm a trial court 'that reaches the right result but for the wrong reasons' so long as 'there is any basis which would support the judgment in the record.'" *United States v. Carista*, 76 M.J. 511, 515 (Army Ct. Crim. App. 2017) (quoting *Robertson v. State*, 829 So.2d 901, 906 (Fla. 2002)), pet. denied, 76 M.J. 401.

We agree with the military judge's underlying findings and application of *Clarke* in that "the attack [in appellant's case] was interrupted by the intervention of a third party . . . . [which] provided the [appellant] an opportunity to withdraw, yet instead, he began the attack anew." The two specifications against appellant's wife constituted an interrupted attack with separate impulses, even while close in time, and united in location, victim, and intent. *Clarke*, 74 M.J. at 628; *see also Blockburger v. United States*, 284 U.S. 299, 302 (1932) (determining two drug sales, made to the same purchaser and following each other with no substantial interval of time, were nevertheless distinct crimes because the second sale was not the result of the impulse of the first sale).

"When an assault [charged under Article 128b, UCMJ] is 'an uninterrupted attack comprising touchings "united in time, circumstance, and impulse"' the allowable unit of prosecution 'is the number of overall beatings the victim endured rather than the number of individual blows suffered.'" *Malone*, 85 M.J. at 584 (quoting *Clarke*, 74 M.J. at 628)). Unlike *Malone*, the interruption here disunited the time, circumstance or impulse of the "beating." 85 M.J. at 584. Appellant

---

[7] We further note the military judge employed a now-defunct legal rule in determining the findings were not multiplicious. Though no fault of the judge, his decision still amounted to an abuse of discretion. *See United States v. Harcrow*, 66 M.J. 154, 160 (C.A.A.F. 2008) (Ryan, J., concurring) (the military judge committed plain error due to a change in the law, not because they "did anything wrong.").

[8] Military courts have in the past given this principle the less colorful appellation of "right result, wrong reason." *See, e.g., United States v. Robinson*, 58 M.J. 429, 433 (C.A.A.F. 2003) ("the military judge's error was harmless, because the military judge reached the correct result, albeit for the wrong reason."); *United States v. Leiffer*, 13 M.J. 337, 345 n.10 (C.A.A.F. 1982) ("however, '[I]n the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.'" (alteration in original) (quoting *Helvering v. Gowran*, 302 U.S. 238, 245 (1937))).

struck his wife first with the back of his hand in response to her removing his headset. ████ then intervened, to whom appellant diverted his attention and impulse to assault her by pushing and pulling her out of the way. Appellant's anger increased as did his violence – he next assaulted his wife again, more severely with a closed fist. The appellant's assaults were interrupted by ████, and were separate impulses, even if the conduct was within moments and shared the same victim and location. Therefore, the assaults are not united, can stand independently, and are not multiplicious.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge POND concurs.

MORRIS, Senior Judge, dissenting;

The majority holds the violent attack comprising the specifications in question was not "uninterrupted" and, therefore, the specifications are not multiplicious. Based on the facts of this case, I disagree, both with their ultimate conclusion and with their application of our prior decision in *United States v. Malone*, 85 M.J. 573 (Army Ct. Crim. App. 2025), and respectfully dissent.

As the majority acknowledges, the unit of prosecution for domestic violence offenses is "'the number of overall beatings the victim endured rather than the number of individual blows suffered.'" *Id.* at 584 (quoting *United States v. Clarke*, 74 M.J. 627, 628 (Army Ct. Crim. App. 2015), pet. denied 74 M.J. 459 (C.A.A.F. 2015)). As such, this court is asked to determine whether appellant's strikes constituted "an uninterrupted attack . . . 'united in time, circumstance, and impulse' . . . ." *Id.* (quoting *Clarke*, 74 M.J. at 628). "If there is one impulse, there can only be one indictment 'no matter how long the action may continue.'" *Id.* at 583 (quoting *United States v. Blockburger*, 284 U.S. 299, 302 (1932)).

The critical question, then, and the basis of my departure from the majority, is whether attacks need be "uninterrupted" in addition to being "united in time, circumstance, and impulse," or whether those terms are meant to provide the framework upon which we are to determine if an assault is interrupted or not.[9] I believe the answer to be the latter and would not find the actions of ████'s

---

[9] I pause to note that the standard proscribed by our superior court includes only the language "united in time, circumstance, and impulse." *E.g. United States v. Rushing*, 11 M.J. 95, 98 (C.M.A. 1981). The additional language of "an uninterrupted attack" was separately added by this court in *Clarke*, 74 M.J. 627.

attempted interruption significant enough to create a break in time, circumstance or impulse, such that the assault was in fact interrupted.

In *Malone*, this court appeared to endorse the latter position by "reject[ing] the government's contention that there was a meaningful break, either in location, time, or impulse that would make the specifications separate and distinct beatings." *Id.* at 584 (internal quotations omitted). While we acknowledged that actions taken by that appellant were "uninterrupted," the reasons *why* the actions were "uninterrupted" turned on their proximity in time, circumstance, and impulse. Put another way, I believe it was the lack of a break in location, time, or impulse that was legally significant, not that the misconduct occurred without interruption. Recent decisions by this court, citing to *Malone*, have similarly relied on the importance of location, time, and impulse, on occasion, even omitting the "uninterrupted attack" language from *Clarke*.[10]

Despite its recent use, the focus on location, time, and impulse is not new. In *Rushing*, one of the foundational cases supporting *Malone*, our superior court held that the appellant's acts in striking the victim with his fist and then throwing a billiard cue at the victim as he fled "were so united in time, circumstance, and impulse in regard to a single person as to constitute a single offense." 11 M.J. at 98 (citations omitted). What is more, the court found the acts united, despite the fact

---

[10] *United States v. Askins*, ARMY 20230303, 2025 CCA LEXIS 420, at *13 (Army Ct. Crim. App. 28 Aug. 2025) (mem. op.) ("Even if we were to find *a break in time and impulse* between the . . . assaults sufficient to create 'two successive impulses . . . separately given,' the specifications remain muliplicious . . . ." (internal quotations omitted) (citation omitted)); *United States v. Murphy*, ARMY 20230517, 2025 CCA LEXIS 339, at *21, 22 (Army Ct. Crim. App. 22 July 2025) (mem. op.) (finding specifications not multiplicious wherein each was "separated by time and place," and therefore did "not demonstrate a continuous course of conduct by appellant."); *United States v. Calvillomagana*, ARMY 20230161, 2025 CCA LEXIS 115 (Army Ct. Crim. App. 19 Mar. 2025) (sum. disp.), pet. denied, __ M.J. __, 2025 CAAF LEXIS 706 (C.A.A.F. 25 Aug. 2025) (certification pursuant to Article 67(a)(2), UCMJ, pending); *United States v. Ford*, ARMY 20230263, 2025 CCA LEXIS 123, at *6 (Army Ct. Crim. App. 21 Mar. 2025) (sum. disp.) (finding specifications multiplicious where they "were instigated by the same argument, and were not interrupted by a break in time."), pet. denied, __ M.J. __, 2025 CAAF LEXIS 717 (C.A.A.F. 26 Aug. 2025) (certification pursuant to Article 67(a)(2), UCMJ, pending); *United States v. Jones*, ARMY 20230382, 2025 CCA LEXIS 111, at *2 n.3 (Army Ct. Crim. App. 13 Mar. 2025) (sum. disp.) (finding assaults occurring one after the other multiplicious where they were part of the "same disagreement" that originated the assault).

that the charged acts were broken by other, uncharged misconduct (the appellant swinging the cue at the victim). *Id.*

The majority also places emphasis on the fact that the "interruption" should have given appellant an opportunity to disengage. But that factor did not significantly change the landscape of the ongoing assault and finding an interruption based on that fact runs counter to the spirit and purpose of *Malone*. Would a victim crying out to their attacker, "Stop, please do not hit me again!" constitute an interruption? Under the majority's overly technical application of *Clarke* and *Malone*, I believe it would. Yet in *Askins*, another panel of this court found that two separately charged assaults that occurred before and after the victim grabbed her belongings and stated that "she was going to appellant's unit to report the assault" were united in both time and location and sprung from the same impulse and would properly be "merged to reflect the single, ongoing nature of the attack." *Askins*, 2025 CCA LEXIS 420, at *12-13. Also in *Ford*, where the court merged two separately charged assaults after appellant followed the victim outside their home and grabbed her, releasing her after she demanded he do so, before shortly thereafter grabbing her and dragging her on the ground. 2025 CCA LEXIS 123, at *4. Both *Askins* and *Ford* seem to stand for the proposition that it is more important to weigh the impact of the interruption than just simply finding an interruption occurred, no matter how slight.

In fact, in most assault-style offenses, the attacker almost always has the option to stop assaulting the victim and walk away. *E.g.*, *Calvillomagana*, 2025 CCA LEXIS 115, at *2 (finding specifications multiplicious where appellant struck his wife in the face, and then shortly thereafter shoved her to the ground, despite having the ability to withdraw). If, as the majority opinion suggests, an assault must be both "uninterrupted" and united in time, circumstance, and impulse, I would invite them to define what makes an interruption legally significant. Short of doing so, this court will have created a new, ambiguous legal standard, with little guidance to practitioners as to how they should scrutinize their cases throughout the court-martial process. I would posit the court must instead ask whether the interruption created a break in time, circumstance, or impulse.

The facts of this case do not establish that appellant took any time to contemplate an option to withdraw when ███████ attempted to intervene. Instead, appellant struck his wife twice, one strike coming almost immediately after the other. During providence, appellant further established that the sole reason he assaulted ██████ was so he could continue beating his wife. As the impulse behind the two strikes of his wife was the same, and the two acts occurred contemporaneously with one another, I believe them to be "united in time, circumstance, and impulse." *Rushing*, 11 M.J. at 98. The mere fact that ████ was assaulted between these two blows does not, on its own, interrupt them in such a

way that the guilty findings for both specifications should be allowed to stand independently.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court