*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, HARRELL, and KORN
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Abraham L. PORATH**
Staff Sergeant (E-6), U.S. Marine Corps
*Appellant*

**No. 202400223**

_____

Decided: 20 November 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Stephen S. Reyes (Arraignment, Motions)
Andrew L. Braden (Motions)
Terrance J. Reese (Motions)
Matthew R. Brower (Trial)

Sentence adjudged 16 February 2024 by a general court-martial convened at Marine Corps Base Quantico, Virginia, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-1 and a bad-conduct discharge.[1]

---

[1] Appellant received 289 days of pretrial confinement credit.

For Appellant:
*Lieutenant Jesse B. Neumann, JAGC, USN*

For Appellee:
*Lieutenant Colonel Candace G. White, USMC*
*Lieutenant Lan T. Nguyen, JAGC, USN*

Judge KORN delivered the opinion of the Court, in which Chief Judge
DALY and Senior Judge HARRELL joined.

————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

————————————

KORN, Judge:

A general court-martial composed of members with enlisted representation convicted Appellant, contrary to his pleas, of one specification of child endangerment, two specifications of domestic violence, and one specification of obstructing justice, in violation of Articles 119b, 128b, and 131b, Uniform Code of Military Justice (UCMJ).[2] The members sentenced Appellant to reduction to  pay grade E-1 and a bad-conduct discharge.

 Appellant raises three assignments of error (AOEs):

> **I. Whether the military judge erred in failing to instruct the members on the definition of "chokehold" for Specification 1 of Charge I.**

> **II. Whether the members' acquittal of Appellant for strangulation, and the military judge's failure to instruct the members on the definition of "chokehold" for Specification 1 of Charge I, resulted in a factually insufficient conviction incapable of being affirmed by this Court.**

---

[2] 10 U.S.C. §§ 919b, 928b, 931b. The military judge found Appellant not guilty of one specification of wrongful possession of marijuana and one specification of obstructing justice pursuant to Rule for Courts-Martial 917, and the members found Appellant not guilty of one specification of aggravated assault by strangulation and one specification of wrongful possession of marijuana.

**III. Whether charging two specifications of domestic violence for a continuous course of conduct lasting a matter of seconds constitutes an unreasonable multiplication of charges.**

We find merit in AOE III and merge Specifications 1 and 2 of Charge I into a single specification.

## I. BACKGROUND

Appellant's convictions for domestic violence stem from an altercation with his wife, A.R.E., in their home on Marine Corps Base Quantico, Virginia. Appellant, who was staying in a barracks room due to ongoing marital issues, went to their home following an earlier argument that they had engaged in via text message. The argument continued in person and quickly devolved into physical violence.[3] A home security camera recorded the argument. The recording shows Appellant pushing A.R.E. and grabbing her by the throat with his hands.[4]

Based on this violent interaction, the Government charged Appellant with two specifications of domestic violence, for "unlawfully placing Ms. A.R.E. in a choke hold," and for "unlawfully pushing Ms. A.R.E.," and with one specification of aggravated assault by strangulation, for "unlawfully strangling [A.R.E.] with his hands."[5] These three specifications led to a motion by Appellant to dismiss for multiplicity and unreasonable multiplication of charges (UMC).[6] Appellant argued that Specification 1 of Charge I (domestic violence using a choke hold) and the sole Specification of Charge II (aggravated assault by strangulation) were both multiplicious and unreasonably multiplied, as they addressed the same conduct.[7] Appellant further argued that Specifications 1 and 2 (domestic violence by pushing) of Charge I constituted UMC, as they were part of a single interaction.[8]

The military judge initially deferred ruling on these motions, concluding that they were not yet ripe. He allowed the Government to proceed on all the

---

[3] The child endangerment charge stemmed from the fact that this occurred in the presence of their five-year-old daughter.

[4] Pros. Ex. 1.

[5] Charge Sheet.

[6] App. Ex. XXXVII.

[7] App. Ex. XXXVII.

[8] App. Ex. XXXVII.

specifications at issue but required the Government to choose whether to ultimately proceed on the aggravated assault or the domestic violence specification if Appellant were convicted of both. The Government informed the military judge that it would proceed on the aggravated assault charge. The members acquitted Appellant of aggravated assault, mooting this issue.

Appellant requested the military judge instruct the members on the definition of "choke hold,"[9] but the military judge declined to do so. After the members found Appellant guilty of both specifications under Charge I, the military judge determined that the facts underlying the specifications were part of a continuing course of conduct and were therefore unreasonably multiplied for sentencing purposes. As a remedy, the military judge merged the specifications for sentencing.[10]

## II. DISCUSSION

### A. The military judge did not err by failing to instruct the members on the definition of "choke hold."

We review a military judge's denial of a defense-requested instruction for an abuse of discretion.[11] A military judge "has substantial discretionary power in deciding on the instructions to give" in response to requests by counsel.[12] To determine whether a military judge's denial of a requested instruction amounts to an abuse of discretion, courts apply the three-part test from *United States v. Carruthers*, where an abuse of discretion occurs if: "(1) the requested instruction was correct; (2) the instruction was not substantially covered by the main instruction; and (3) the instruction was on such a vital point in the case that the failure to give it deprived the accused of a defense or seriously impaired its effective presentation."[13]

---

[9] In his brief to this Court, Appellant uses "chokehold" as a single word, and it is regularly transcribed that way in the record. However, the Government charged Appellant with "placing Ms. A.R.E. in a choke hold." We make no determination whether a distinction exists between the two.

[10] R. at 1294.

[11] *United States v. Bailey*, 77 M.J. 11, 14 (C.A.A.F. 2017).

[12] *United States v. Carruthers,* 64 M.J. 340, 345-46 (C.A.A.F. 2007) (quoting *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993)).

[13] *Id.* (citation modified).

The military judge declined to give an instruction on the definition of "choke hold," stating that because the act at issue was charged under the violent offense clause of domestic violence, which incorporates the underlying offense of assault consummated by a battery, " 'choke hold' can just be accepted in the way that a panel of members would be presented with a -- a punch or a kick to define for themselves."[14] The military judge then instructed the members on the two elements of Specification 1 of Charge I: (1) that Appellant committed the violent offense of unlawfully placing A.R.E. in a choke hold; and (2) that at the time, A.R.E. was Appellant's spouse.[15] The military judge further defined "violent offense" as an assault consummated by a battery, and described "battery" as an unlawful infliction of "bodily harm," which he defined as an offensive touching, however slight.[16]

Appellant's argument that the military judge erred by not defining "choke hold" for the members fails to satisfy the initial prong of the three-part *Carruthers* test. In fact, Appellant falls short of even qualifying for review under the first prong of *Carruthers,* as he never requested a specific definition of "choke hold" from the military judge. The military judge explicitly discussed instructions for Specification 1 of Charge I multiple times, and while defense counsel continued to argue that it addressed the same conduct as Charge II, he repeatedly failed to offer a definition of "choke hold."[17] As we do not have a proposed instruction to review to determine if it was correct, we conclude that Appellant fails to meet the first prong of the *Carruthers* test.

With no proposed instruction for this Court to review, Appellant similarly cannot satisfy prongs two or three of the *Carruthers* test. However, even assuming Appellant had submitted an instruction defining "choke hold," he would still fail to satisfy the second prong of the *Carruthers* test. This is because we concur with the military judge's reasoning when he stated "[choke hold] does not need to be defined. It can just be accepted in the way that a panel of members would be presented with a -- a punch or a kick."[18] The military judge's subsequent instructions on "violent offense" and "offensive touching" were legally correct and provided the members with the requisite understanding to reach a verdict.

---

[14] R. at 1142.

[15] App. Ex. LXX at 1.

[16] App. Ex. LXX at 1-2.

[17] *See* R. at 667, 1118-19.

[18] R. at 1142.

Even if Appellant had proposed a correct instruction at trial to define "choke hold," he would still fail to meet the final prong of the *Carruthers* test. The military judge's decision not to provide a definition for the term in no way deprived Appellant of a defense, nor did it seriously impair his presentation at trial. There was no dispute about the precise acts which formed the basis for the charges in Appellant's case. In fact, they were captured on video, and A.R.E. testified consistently with the video. There was therefore no possibility that Appellant was confused about what he was required to defend against. Instead, he was fully aware that the allegation against him in Specification 1 of Charge I was that he unlawfully put his hands around his wife's throat and held her down, which may reasonably be characterized as a "choke hold." In light of this, a definition of "choke hold" supplied by the military judge would not have provided him with an otherwise unavailable defense, aided in his ability to effectively present a defense case, or allowed him to more effectively attack the Government's case. Absent the military judge providing a definition, Appellant was still able to present an effective, albeit ultimately unsuccessful, defense.

Appellant argues that this Court should apply a de novo standard of review to this issue, asking us to disregard the three-part *Carruthers* test created by our superior court and instead consider three issues that Appellant deems to be the "relevant questions" for this Court.[19] We decline to adopt Appellant's proposed method of review. Instead, we elect to follow the binding precedent of our superior court and apply the *Carruthers* test under an abuse of discretion standard. In so doing, because Appellant fails to satisfy any of the *Carruthers* prongs, we hold that the military judge did not abuse his discretion in declining to provide the members with an instruction defining the term "choke hold."

---

[19] According to Appellant:

> The question before the Court is *not* whether the military judge denied a defense-requested instruction and thereby "'deprived [the accused] of a defense or seriously impaired its effective presentation.'" Instead, the relevant questions are (1) whether the members were properly instructed on the applicable definition for a term relied upon to prove an essential element, and (2) whether such instruction had "the effect of relieving the [Government] of its burden of persuasion beyond a reasonable doubt of every essential element," or (3) whether such instruction led to a legally impossible and mutually exclusive verdict in violation of Appellant's right against double jeopardy.

Appellant's Reply Brief at 2-3 (citations omitted).

**B. Appellant has not identified a deficiency in proof to trigger this Court's factual sufficiency review.**

This Court may consider whether a finding of guilty "is correct in fact upon request of an appellant who makes a specific showing of a deficiency in proof."[20] If an appellant makes such a showing, this "Court may weigh the evidence and determine controverted questions of fact," providing "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence."[21] If this "Court is clearly convinced that the finding of guilty was against the weight of the evidence, [we] may dismiss, set aside, or modify the finding, or affirm a lesser finding."[22]

Appellant argues that his conviction for the first specification of domestic violence is factually insufficient because "the members acquitted Appellant of 'strangling' his wife—which is the same conduct as placing her in a 'choke-hold.'"[23] However, by merely identifying the findings in the case, where Appellant was convicted of one offense while acquitted of another, Appellant fails to identify a deficiency in proof which would trigger our factual sufficiency review. Any connection between Appellant's acquittal on the aggravated assault by strangulation charge and the evidence supporting the domestic violence by "choke hold" conviction is based on unfounded speculation, and thus does not equate to a deficiency in proof. Appellant has therefore failed to establish the predicate requirement to initiate a factual sufficiency review.

Even if Appellant were correct that the acquittal on Charge II was a deficiency in proof that triggered a factual sufficiency review of Specification 1 of Charge I by this Court, no relief would be warranted. A.R.E. credibly testified that Appellant grabbed her throat with his hands, and her testimony was wholly corroborated by the security video. With such compelling and largely unrebutted incriminating evidence, there is no possibility that we could be clearly convinced that the finding of guilty was against the weight of the evidence.[24]

---

[20] 10 U.S.C. § 866(d)(1)(B).

[21] *Id.*

[22] *Id.*

[23] Appellant's Brief at 11.

[24] Appellant embeds a double jeopardy argument into his factual insufficiency claim. However, this argument is similarly uncompelling. The members clearly found that Appellant grabbing A.R.E. by the throat with his hands and holding her down constituted a "choke hold" and therefore amounted to the offensive touching required

**C. Although the military judge properly found that Specifications 1 and 2 of Charge I amounted to an unreasonable multiplication of charges, he abused his discretion in the remedy provided.**

We review a military judge's ruling on unreasonable multiplication of charges for an abuse of discretion.[25] "[Rule for Courts-Martial] 307(c)(4) directs that '[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person.'"[26] "If charges have been unreasonably multiplied, the accused may seek appropriate relief from the military judge."[27] Appropriate "relief may include dismissal of lesser offenses, merger of offenses into one specification, or a determination that the maximum punishment for the unreasonably multiplied offenses is the maximum authorized punishment of the offense carrying the greatest maximum penalty."[28]

Courts consider five factors from *United States v. Quiroz* when determining if multiple findings of guilt constitute an unreasonable multiplication of charges: (1) whether the appellant objected at trial; (2) whether each charge and specification was aimed at distinctly separate criminal acts; (3) whether the number of charges and specifications misrepresented or exaggerated the appellant's criminality; (4) whether the number of charges and specifications unreasonably increased the appellant's punitive exposure; and (5) whether there was any evidence of prosecutorial overreaching or abuse in the drafting of the charges.[29]

---

under domestic violence. The fact that they found this while acquitting Appellant of aggravated assault by strangulation, which required "intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of a person by applying pressure to the throat or neck" does not preclude this Court from affirming a finding of guilty for Specification 1 of Charge I.

[25] *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012) (citing *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004)).

[26] *United States v. Hardy*, 77 M.J. 438, 440 (C.A.A.F. 2017).

[27] *Id.*

[28] *Id.* (internal citations omitted); *see also United States v. Roderick*, 62 M.J. 425 (C.A.A.F. 2006) (finding that potential remedies available to the trial court for unreasonably multiplied charges are consolidation of the charges for sentencing purposes or dismissal of the charges).

[29] 55 M.J. 334 (C.A.A.F. 2001).

After the members found Appellant guilty of both specifications under Charge I, the military judge ruled on Appellant's UMC motion. He determined that:

> [T]he push for which [Appellant] was convicted . . . was not a separate and distinct incident from the chokehold . . . . They were a continuous course of conduct. The chokehold was able to be carried out as a result of [Appellant] pushing down Ms. A.R.E. But for the push, the chokehold could not, thereafter, have naturally occurred. It was necessary in order to accomplish the hold of the victim.[30]

The military judge therefore ruled that the specifications were unreasonably multiplied, merging them for sentencing and reducing Appellant's maximum potential confinement from 13 years to 9 years and 6 months.[31]

As the military judge properly determined that Specifications 1 and 2 of Charge I amounted to UMC, we need not apply the *Quiroz* factors here. Instead, the only issue before this Court is whether the military judge abused his discretion in his applied remedy.

Despite the wide discretion given to military judges to fashion remedies for UMC, Appellant should not be separately convicted for what amounts to a single, brief, uninterrupted attack involving multiple offensive touchings "united in time, circumstance, and impulse."[32] The unit of prosecution for the type of ongoing assault found in this case is the number of times the assailant attacked the victim (in Appellant's case—one), rather than the number of individual blows. Despite numerous developments in the law concerning multiplicity and UMC over the years, this remains true: "When Congress enacted Article 128, it did not intend that, in a single altercation between two people, each blow might be separately charged as an assault."[33] We therefore conclude that the military judge abused his discretion by merging the specifications at issue for sentencing only.

We hold that multiple convictions for domestic violence stemming from the same altercation, both involving an underlying offense of assault consummated by a battery, were unreasonable in this case. As the facts clearly showed a

---

[30] R. at 1294.

[31] R. at 1294.

[32] *United States v. Rushing*, 11 M.J. 95, 98 (C.M.A. 1981).

[33] *United States v. Morris*, 18 M.J. 450, 450 (C.M.A. 1984).

single incident, we find a substantial basis in law and fact to consolidate the two domestic violence specifications into a single specification. Because the military judge merged the specifications at trial for sentencing purposes, Appellant suffered no prejudice in the sentencing phase, and we conclude that no additional relief is warranted.[34]

### III. CONCLUSION

Specifications 1 and 2 of Charge I are merged as follows: "In that Staff Sergeant Abraham L. Porath, U.S. Marine Corps, did, at or near MCB Quantico, Virginia, on or about 01 May 2023, commit a violent offense against Ms. A.R.E., the spouse of the said SSgt Porath, to wit: by unlawfully placing Ms. A.R.E. in a choke hold and unlawfully pushing Ms. A.R.E." After careful consideration of the record and briefs of appellate counsel, we have determined that the remaining findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[35] The remaining findings and the adjudged sentence are **AFFIRMED**.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[34] Appellant seeks no additional relief on this issue before this Court.

[35] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.